**MILINDA KAKANI**, CSB 321467
**LEAH GASSER-ORDAZ**, CSB 303881
PUBLIC COUNSEL
610 S. Ardmore Ave.
Los Angeles, CA 90005
(213) 385-2977 / (213) 201-4723 facsimile
Email: mkakani@publiccounsel.org
Email: lgasser-ordaz@publiccounsel.org

**DONALD W. COOK**, CSB 116666
ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(213) 252-9444 / (213) 252-0091 facsimile
Email: manncook@earthlink.net

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELICA R. UNTALAN,<br><br>Plaintiff,<br><br>vs.<br><br>WARREN A. STANLEY, JOSEPH FARROW, TARIQ D. JOHNSON, JONATHAN COCHRAN, JOSEPH ZAGORSKI, JUSTIN VAUGHAN, PAOLA TRINIDAD and Does 1 through 10, all sued in their individual capacities,<br><br>Defendants. | Case No. 2:19-cv-7599<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1.** Damages (42 U.S.C. § 1983 / Cal. Civ. Code § 52.1(b))<br><br>**2.** Damages (Fourth Amendment / 42 U.S.C. § 1983)<br><br>**3.** Damages (Substantive / Procedural Due Process / 42 U.S.C. § 1983)<br><br>**4.** Unlawful Takings (42 U.S.C. § 1983 / Fifth Amendment)<br><br>**5.** Damages (Cal. Civ. Code § 52.1(b))<br><br>**6.** Damages (Cal. Const., Ar. I § 13)<br><br><u>DEMAND FOR JURY TRIAL</u> |

1

TABLE OF CONTENTS

Page

I.      JURISDICTION..............................................................................................3

II.     PARTIES..........................................................................................................3

III.    FACTS COMMON TO ALL CLAIMS..........................................................4

      A. *CHP Vehicle Impound Policy.* ............................................................4
      B. *The Search of Plainff's Person And Seizure and 30 Day Impound Of Plaintiffs Vehicle* ...................................................................................6

COUNT ONE
      (42 U.S.C. p 1983 / Cal. Civ. Code § 52.1(b).................................................10

COUNT TWO
      (42 U.S.C. § 1983 / Fourth Amendment) ) .....................................................11

COUNT THREE
      (42 U.S.C. § 1983 / Procedure & Substantive Due Process)...........................11

COUNT FOUR
      (42 U.S.C. § 1983 / Unlawful Taking)............................................................13

COUNT FIVE
      (Cal. Civil Code §52.1(b)).............................................................................14

COUNT SIX
      (Cal. Const., Art. I § 13)................................................................................15

IV. PRAYER: ...........................................................................................................15

      *On The First Cause of Action:* ......................................................................15
      *On The Second Cause of Action:* ...................................................................16
      *On The Third and Fourth Causes of Action:* ................................................16
      *On The Fifth Cause of Action:* ......................................................................16
      *On The Sixth Cause of Action* .......................................................................16
      *On All Causes of Action:* ...............................................................................17

DEMAND FOR JURY TRIAL .............................................................................18

00133186.DOCX

# I. JURISDICTION.

1. Plaintiff's claims arise under 42 U.S.C. §1983 and state law. Accordingly, federal jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

2. Plaintiff's claims arise out of, *inter alia*, acts of employees and agents of the California Highway Patrol ("CHP"), acts which caused injury to Plaintiff in the County of Los Angeles. Accordingly, venue is proper within the Central District of California.

# II. PARTIES.

3. Plaintiff Angelica R. Untalan, an individual, is and was at all times relevant hereto, a resident of the County of Los Angeles.

4. Defendant Warren A. Stanley ("Stanley"), an individual, was and is the Commissioner of the California Highway Patrol ("CHP"). Plaintiff sues Stanley in his individual capacity only.

5. Defendant Joseph Farrow, an individual, was up until about September 2017 Plaintiff is informed and believes, the CHP Commissioner and defendant Stanley's predecessor. Plaintiff sues Farrow in his individual capacity only.

6. Defendant Tariq D. Johnson ("Johnson"), an individual and CHP captain, was at all times material hereto, the commanding officer of the CHP's South Los Angeles station. Plaintiff sues Johnson in his individual capacity only.

7. Defendants Jonathan Cochran ("Cochran") and Joseph Zagorski ("Zagorski"), individuals and CHP lieutenants, were at all times material hereto, supervisors assigned to the CHP's South Los Angeles station. Plaintiff sues Cochran and Zagorski in their individual capacities only.

8. Defendant Justin Vaughan ("Vaughan") an individual and CHP sergeant, was at all times material hereto, a first line supervisor assigned to the CHP's South Los Angeles station. Plaintiff sues Vaughn in his individual capacity only.

9. Defendant Paola Trinidad ("Trinidad") an individual and CHP patrol officer, was at all times material hereto, a patrol officer assigned to the CHP's South Los Angeles

00133186.DOCX

1   station. Plaintiff sues Trinidad in her individual capacity only.

2       10. Plaintiff is ignorant of the true names and capacities of defendants sued herein as

3   DOES, and therefore sues these defendants by fictitious names. Plaintiff will give notice

4   of their true names and capacities when ascertained. Plaintiff is informed and believes

5   and thereon alleges that defendant DOES are responsible in some manner for the

6   damages and injuries hereinafter complained of.

7       11. The complained of acts and omissions were performed by persons within the

8   course and scope of employment with their employer, the CHP. All acts and omissions

9   were under color of state law.

10  **III. FACTS COMMON TO ALL CLAIMS.**

11          *A.    CHP VEHICLE IMPOUND POLICY.*

12      12. Plaintiff is informed and believes and thereon alleges that defendants Farrow and

13  Stanley have personally approved an official policy, hereinafter "Impound Policy," by

14  which a CHP officer may direct or cause a vehicle to be seized and impounded for 30

15  days *without a warrant* whenever the officer concludes one or more of the following

16  conditions exist:

17              A.  The vehicle's driver has never been issued a driver's license; or

18              B.  The driver's license for the vehicle's driver is suspended or revoked; or

19              C.  The driver can only drive a vehicle with a functioning, certified interlock

20                  device, and the vehicle the driver is driving lacks such a device.

21      13. Under the Impound Policy, when the vehicle is impounded for 30 days the CHP

22  bars the vehicle's owner from reclaiming possession of her vehicle and instead, directs

23  that the vehicle be held at a tow yard designated by the CHP. The Impound Policy

24  prohibits the vehicle's owner from reclaiming possession even though (a) the owner is

25  a validly licensed driver or has a licensed driver available to drive the vehicle; (b) is

26  willing and able to reclaim possession; (c) has the statutorily required vehicle insurance;

27  (d) is tending payment of accrued administrative fees and storage charges; and (e) the

28  vehicle is not posing a danger to public safety.

14. Under the Impound Policy, both the initial vehicle seizure and subsequent 30-day vehicle impoundment are made without warrants or judicial review of any type.

15. During the 30 days or more the vehicle is impounded, vehicle storage charges are accruing which, per the Impound Policy, must be paid in full before the vehicle will be released even in cases where the 30 day impound period has expired. If not paid, the privately-owned storage yard will sell the vehicle at a lien sale to satisfy the unpaid storage charges and administrative fees. If the amount recovered by the lien sale is insufficient to pay outstanding storage charges and administrative fees, the vehicle's (former) registered owner remains liable to the tow yard for the difference. Typically, following a 30-day vehicle impound administrative fees and storage charges add up to about $2,000.

16. By virtue of this Impound Policy, the vehicle's owner is deprived of her property and possessory interests and rights in the vehicle. For example, the vehicle owner cannot sell the vehicle even to a licensed driver because she does not have current possession or control of the vehicle and is unable to prevent the accumulated storage fees (which often results in the sale of the vehicle at auction because either the storage fees exceed the vehicle's value or the storage fees have become so high that the owner does not have the funds to pay them).

17. The Impound Policy provides no mechanism for judicial review of a 30 day impound and no constitutionally adequate administrative hearing mechanism to challenge the lawfulness of the 30 day impounds.

18. Further, the Impound Policy's requirements on notice, if implemented as written, would not allow for timely notice to the vehicle's owner of an impoundment. The notices sent pursuant to the Impound Policy or provided at the time of initial seizure, state the impounds are mandatory 30 day impounds. Thus, the notices communicate to a person whose vehicle was impounded that the vehicle will be kept for a minimum of 30 days, and mislead her to believe that any attempt to seek the return of the vehicle in less than 30 days is effectively meaningless. Even if the owner could produce a valid driver's

license or a licensed driver to drive the car off the impound lot within the first 30 days of impoundment, a plain reading of the text of the Impound Policy does not inform someone of their right to claim the vehicle with their own license or a licensed driver at a time they could afford to pay the one day initial impound fee or a few days of impound fees. The notice policies and notices effectively communicate that the fact that the vehicle was seized without a warrant is not a basis for the return of the vehicle.

19. Since the impound here was pursuant to Cal. Vehicle Code § 16402.6, its provisions apply. The only means of contesting the lawfulness of a § 16402.6(a)(1) thirty day impound is requesting a hearing under Vehicle Code § 22852. But at a § 22852 tow hearing, the vehicle's registered owner is limited to two arguments, either that there are "mitigating circumstances," the definition of which is not provided in the Vehicle Code; or establishing the invalidity of the initial decision to have the vehicle removed from the street. Furthermore, pursuant to Art. III §3.5 of the California Constitution, a § 22852 hearing official cannot adjudicate the constitutionality of a 30-day impound without a warrant. Thus, the CHP's Impound Policy provides no constitutionally adequate remedy for vehicle owners to contest the lawfulness of the 30 day impounds.

     B.    *THE SEARCH OF PLAINTIFF AND SEIZURE AND 30 DAY IMPOUND OF PLAINTIFF'S VEHICLE.*

20. Plaintiff was, at all times relevant to this lawsuit, the registered owner of a 2000 Pontiac Grand Am passenger vehicle.

21. On Sunday afternoon, May 12, 2019, Plaintiff was driving her Pontiac on Rosecrans Avenue east of Broadway in Los Angeles County. At the behest of Defendant Trinidad, an on-duty CHP patrol officer, Plaintiff stopped her vehicle. Initially, Trinidad told Plaintiff she stopped Plaintiff because allegedly she was not wearing her seatbelt (in fact, Plaintiff was). A few moments later Trinidad changed her justification for the stop, now telling Plaintiff she stopped her because Trinidad had allegedly observed a crack in the Pontiac's front windshield. (That crack was only visible if one is within one or two feet of the car's windshield.) Plaintiff is informed and believes and thereon

1   alleges that Trinidad changed her stated justification for stopping Plaintiff upon realizing
2   Plaintiff was, in fact, wearing her seatbelt.

3   22. Trinidad instructed Plaintiff to exit the Pontiac; Plaintiff complied. Then as
4   Plaintiff was standing near the Pontiac's left rear, Trinidad searched Plaintiff without
5   Plaintiff's consent. This physical search of Plaintiff's person included Trinidad lifting
6   up Plaintiff's shirt to search around her waist, and reaching into Plaintiff's pants'
7   pockets. When Trinidad conducted the search, she had no information that Plaintiff
8   possessed a weapon of any type; no information that Plaintiff was in possession of any
9   contraband; and no information that Plaintiff had made a threat of violence of any type
10  towards anyone at any time. When Trinidad conducted the search, at best Trinidad may
11  have had justification to believe that the front windshield of Plaintiff's Pontiac was
12  cracked – a traffic "fix-it" infraction.

13  23. During the course of the stop Trinidad determined Plaintiff had never been issued
14  a California driver's license. Whereupon pursuant to the Impound Policy and over
15  Plaintiff's protest, Trinidad directed that Plaintiff's vehicle be seized and impounded for
16  30 days, pursuant to § 14602.6(a)(1).

17  24. Two days later on Tuesday, May 14, 2019, Plaintiff appeared at the CHP South
18  Los Angeles station with a licensed California driver. Plaintiff requested that the CHP
19  release her vehicle, that Plaintiff had a licensed driver available to drive it, and Plaintiff
20  would pay all towing and storage charges that had accrued and were due as of that date.
21  CHP officials refused to release the vehicle, stating it would be impounded for 30 days
22  pursuant to the Impound Policy.

23  25. On Thursday, May 16, 2019, Plaintiff's counsel contacted the CHP South Los
24  Angeles station and spoke with CHP official Shalonda Moore, a civilian employee.
25  Plaintiff is informed and based thereon alleges that Shalonda Moore runs the station's
26  vehicle impound desk. Plaintiff s counsel explained that the CHP's refusal to release
27  Plaintiff's vehicle as she requested on May 14, was wrongful in that (a) there was no
28  legal justification for continuing to withhold the vehicle given Plaintiff's willingness to

00133186.DOCX

1  pay all accrued towing and storage fees and (b) Plaintiff had a licensed driver ready and
2  willing to safely and legally drive the vehicle from the storage lot. Plaintiff's counsel
3  explained to Shalonda Moore that the Ninth Circuit's decision in *Brewster v. Beck*, 859
4  F.3d 1194 (9th Cir. 2017) requires that Plaintiff's vehicle be released to her. Ms. Moore
5  stated she was unaware of the *Brewster* decision and that the only basis for releasing the
6  vehicle would be as stated in Cal. Veh. Code § 14602.6.

7      26. On Friday, May 17, 2019, Plaintiff's counsel spoke with Defendant Vaughan
8  regarding the impound of Plaintiff's vehicle. To Vaughan Plaintiff's counsel reiterated
9  the points she had made the day before to Ms. Moore. Vaughan stated he was aware of
10  the *Brewster* decision but that the decision did not apply to the CHP because *Brewster*
11  involved the Los Angeles Police Department, not the CHP. Vaughan further stated
12  Plaintiff's vehicle would not be released prior to expiration of the 30-day impound
13  unless Plaintiff could establish justification for early release pursuant to one of the
14  provisions of § 14602.6.

15      27. On May 23, 2019, Plaintiff, along with her legal representative, met with
16  Defendants Cochran and Zagorski in the context of a Cal. Veh. Code § 22852 storage
17  hearing. Plaintiff again tendered payment of accrued towing and storage charges, and
18  requested that her vehicle be released to her agent, a licensed California driver. Stating
19  they were acting pursuant to the Impound Policy, Cochran and Zagorski refused to
20  release Plaintiff's vehicle. These Defendants essentially repeated the same points made
21  by Defendants Vaughan and Ms. Moore – the vehicle would not be released unless and
22  until Plaintiff satisfied one of the early release conditions specified in § 14602.6.

23      28. By letter delivered via facsimile and email to Defendants Stanley and Johnson on
24  June 19, 2019, through counsel Plaintiff again requested that her vehicle be released,
25  that the CHP's refusal to release the vehicle on May 14, May 16, May 17, and May 23,
26  was wrongful and in violation of decisions such as *Brewster* and *Sandoval v. County of*
27  *Sonoma*, 912 F.3d 509 (9th Cir. 2018). Both Defendants ignored Plaintiff's request, and
28  no one has ever responded to Plaintiff's written request.

00133186.DOCX

29. Plaintiff is informed and believes and based thereon alleges that Defendants' objective in refusing to release Plaintiff's vehicle was to punish Plaintiff for having driven her vehicle as an unlicensed driver.

30. Plaintiff is informed and believes and based thereon alleges that Defendants Farrow and Stanley personally approved the Impound Policy *and* its application to the seizure of Plaintiff's vehicle. Plaintiff is further informed and believes and based thereon alleges that these Defendants gave such approval *even though they were informed that the application of the Impound Policy to the circumstances described above* was contrary to controlling Ninth Circuit law. These allegations are based on the following:

A. Plaintiff is informed that shortly after the Ninth Circuit issued its *Brewster* decision (decided June 21, 2017) Defendant Farrow, then the CHP Commissioner, was informed of the *Brewster* decision and that the Impound Policy was inconsistent with *Brewster*. Despite being so informed and despite having the power and obligation to update and revise the Impound Policy so as to be consistent with the Fourth Amendment, Farrow refused to do so.

B. Plaintiff is informed and believes and based thereon alleges that continuing up through the present, with the knowledge and acquiescence of Defendants Farrow and Stanley, CHP officers have regularly seized and impounded vehicles under § 14602.6 in violation of *Brewster*.

C. Plaintiff is informed and believes and based thereon alleges that via letter delivered in early December 2017, Defendant Stanley, then acting CHP Commissioner, was informed that the CHP was enforcing the Impound Policy contrary to law and in contravention of the *Brewster* holding. Despite being so informed, Stanley refused to take any remedial steps. Plaintiff is informed and based thereon alleges that instead, Stanley sanctioned the continued enforcement of the Impound Policy in violation of law.

D. Stanley was informed, in writing, of the unlawful 30 day impound of Plaintiff's vehicle, including why it was unlawful. Despite being so informed,

00133186.DOCX

Stanley refused to direct that his subordinates respect the *Brewster* and *Sandoval* decisions and thereby, authorize the release of Plaintiff's vehicle as she had requested.

31.   At the conclusion of the 30 day-impound period, Plaintiff was unable to reclaim her vehicle because she did not have the funds to pay the accrued charges which, she is informed, was about $2,000. Consequently, Plaintiff is informed and believes and based thereon alleges, that the towing and storage company that was holding the vehicle at the CHP's direction, sold the Pontiac at a lien sale on or about July 1, 2019 pursuant to Cal. Veh. Code § 22851(a).

## COUNT ONE - UNLAWFUL SEARCH OF PERSON
## 42 U.S.C. § 1983 / Cal. Civ. Code § 52.1(b)

(As Against Defendant Trinidad only)

32. By this reference, Plaintiff re-alleges and incorporates all previous and following paragraphs as if fully set forth herein.

33. Plaintiff is informed and believes and based thereon alleges that at the time Trinidad searched Plaintiff's person, Trinidad knew that she did not have justification for the search because she had been trained that such a search requires specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that Plaintiff was engaged in criminal conduct that may involve a weapon and/or dangerous contraband.

34. Plaintiff is further informed and believes and based thereon alleges, that Trinidad knew, based on training, that she cannot conduct a search of a person such as Plaintiff – a vehicle's driver stopped for a minor, non-dangerous traffic offense who was cooperative and compliant, and who at no time made any kind of threat of any kind whatsoever directed to anyone.

35. Notwithstanding Trinidad's knowledge and training described above, Trinidad searched Plaintiff in a knowing violation of Art. I § 13 of the California Constitution, and in a knowing violation of the Fourth Amendment to the United States Constitution.

00133186.DOCX

1   Therefore, Plaintiff is entitled to recover compensatory and punitive damages under 42

2   U.S.C. § 1983 and Cal. Civ. Code § 52.1(b), and statutory damages under § 52.1(b).

3   36. Plaintiff has timely submitted to the State of California's Government Claims

4   Program a claim for damages pursuant to Cal. Gov't Code § 910 regarding the events

5   described above, and it has been denied.

6                    **COUNT TWO – UNLAWFUL VEHILCE IMPOUND**

7                                **42 U.S.C. § 1983**

8                              (As Against All Defendants)

9   37. By this reference, Plaintiff re-alleges and incorporates all previous and following

10  paragraphs as if fully set forth herein.

11  38. The seizure and 30-day impoundment of Plaintiff's vehicle violated the Fourth

12  Amendment in that the seizure and impoundment was (a) made without a warrant and

13  (b) did not fall within an exception to the warrant requirement, e.g., during the 30-day

14  impoundment Plaintiff's vehicle did not present a threat to public safety. Plaintiff is

15  therefore entitled to recover as compensatory and punitive damages from each defendant

16  proximately caused by the wrongful seizure and 30-day impoundment.

17             **COUNT THREE - SUBSTANTIVE AND PROCEDURAL**

18                        **DUE PROCESS 42 U.S.C. § 1983**

19              (As against Defendants Farrow, Stanley, Johnson, Cochran,

20                          Zagorski, Vaughan and DOES)

21  39. Plaintiff re-alleges and incorporates all previous and following paragraphs as if

22  fully set forth herein.

23  40. Plaintiff is informed and believes and based thereon alleges that when defendants

24  imposed, sanctioned, authorized and/or condoned the 30-day impound on Plaintiff's

25  vehicle pursuant to the Impound Policy and Cal. Veh. Code § 14602.6(a)(1) without a

26  warrant or any form of judicial review, Defendants Farrow, Stanley, Johnson, Cochran,

27  Zagorski, Vaughan and DOES did so in order to impose an "administrative penalty" for,

28  among other reasons, to deter Plaintiff from letting an unlicensed driver drive her

1  Pontiac.

2  41. Moreover, by imposing the 30-day vehicle impound without a warrant or any

3  form of judicial review, the above-mentioned Defendants caused Plaintiff to lose her

4  impounded car at a lien sale auction. Plaintiff incurred this loss even though (a) she has

5  not been adjudicated guilty of any crime arising from the May 12, 2019 detention and

6  vehicle seizure, and (b) Plaintiff informed Defendant she was willing to pay all accrued

7  towing and storage charges to reclaim possession of her vehicle with a licensed

8  California driver.

9  42. Defendants' 30-day impound of Plaintiff's vehicle was arbitrary and capricious

10  in that Defendants could satisfy any legitimate community caretaking need by seizing

11  and removing the vehicle pursuant to Cal. Veh. Code §22651(p) rather than by a 30 day

12  impound pursuant to Cal. Veh. Code §14602.6(a)(1).

13  43. The 30 day impoundment of Plaintiff's Pontiac constituted the imposition of a

14  *punitive sanction. Kokesh v. Securities and Exchange Commission*, ___ U.S. ___, 137

15  S.Ct. 1635, 1643-44 (2017): "Sanctions imposed for the purpose of deterring infractions

16  of public laws are inherently punitive because 'deterrence (is) not (a) legitimate

17  nonpunitive governmental objectiv(e).' *Bell v. Wolfish*, 441 U.S. 520, 539, n.20 (1979);

18  *see also United States v. Bajakian*, 524 U.S. 321, 329, 118 S.Ct. 2028, 141 L.Ed.2d

19  314 (1998) ('Deterrence ... has traditionally been viewed as a goal of punishment')."

20  Because defendants punished Plaintiff without judicial or quasi-judicial review,

21  defendants violated Plaintiff's substantive and/or procedural due process rights. *Bell v.*

22  *Wolfish*, 441 U.S. 520, 536 (1979) ("For under the Due Process Clause, a detainee may

23  not be punished prior to an adjudication of guilt in accordance with due process of law.");

24  *Wong Wing v. United States*, 163 U.S. 228, 237 (1896) (Statute authorizing executive

25  branch to impose summary punishment on aliens subject to deportation, violated due

26  process).

27  44. Moreover, demanding that Plaintiff pay fees to reclaim possession of her vehicle

28  was the imposition of *de facto* monetary penalties even though Plaintiff had not been

1  adjudicated guilty of any crime arising from the seizure of her Pontiac. The imposition
2  of this financial penalty thus constituted a further violation of Plaintiff's due process
3  rights. *Nelson v. Colorado*, 581 U.S. ___, 137 S.Ct. 1249, 1255-56 (2017) (The State
4  "may not presume a person, adjudged guilty of no crime, nonetheless guilty enough for
5  monetary exactions. . . [U]nder the Due Process Clause, [an individual] who has not
6  been adjudged guilty of any crime may not be punished.").

7      45. Further, Defendants' refusal to provide or allow a hearing where the lawfulness
8  of the warrantless 30 day impound could be challenged, their failure to provide a hearing
9  before a neutral party, their failure to provide any judicial review of their warrantless
10  seizures, their failure to provide meaningful remedies to remedy their unlawful conduct,
11  their failure to provide notice of the owner's right to retrieve the car in less than 30 days
12  as required by the Fourth Amendment, and their providing false and misleading
13  information to the car's driver and the car's owner that the owner was not lawfully
14  entitled to retrieve the car in less than 30 days, all violate due process of law.

15      46. The aforementioned acts of Defendants and each of them directly and
16  proximately caused Plaintiff to be deprived of their rights as stated above, thereby
17  entitling this Plaintiff to recover compensatory damages proximately caused by
18  Defendants' wrongful acts.

19              **COUNT FOUR - UNLAWFUL TAKINGS 42 U.S.C. § 1983**
20                  (As Against All Defendants For Unlawful Taking)

21      47. By this reference, Plaintiff re-alleges and incorporates all previous paragraphs as
22  if fully set forth herein.

23      48. By impounding Plaintiff's vehicle for 30 days, Defendants physically took
24  possession of the Pontiac from Plaintiff, ostensibly for a public purpose of deterring
25  future unlawful driving. Defendants, however, did not compensate Plaintiff but instead,
26  effected a *de facto* forfeiture of Plaintiff's vehicle. Consequently, the 30-day impound
27  constituted a "Taking" within the meaning of the Takings Clause of the Fifth
28  Amendment to the United States Constitution.

49. Defendants' seizure of the Pontiac constituted a final decision to impose the 30 day impound. The Impound Policy provides no administrative remedy to challenge the 30 day impound as violating vehicle owners' Fourth and/or Fifth Amendment rights. Both §14602.6 and the Impound Policy provides no compensation to a vehicle owner for a 30 day vehicle impound. Moreover, the California constitution, Art. III §3.5 bars the CHP from adjudicating if a 30 day §14602.6 vehicle impound violates a vehicle owner's Fourth or Fifth Amendment rights.

50. Because Defendants effected a Taking of personal property without payment of compensation, Plaintiff is entitled to recover the reasonable rental value of her Pontiac, plus compensation for the permanent loss of her vehicle.

## COUNT FIVE - VIOLATION OF CAL. CIVIL CODE § 52.1

### (As Against All Defendants)

51. By this reference, Plaintiff re-alleges and incorporate all previous paragraphs as if fully set forth herein.

52. The 30 day impoundment of Plaintiff's Pontiac was done intentionally, at Defendants' discretion. Defendants imposed and enforced the 30 day impound so as to punish Plaintiff. Excluding possibly Defendant Trinidad, Defendants enforced the 30-day impound in knowing violation of the Fourth Amendment to the United States Constitution, and Art. I § 13 of the California Constitution. Further, for the reasons previously explained, Defendants Farrow, Stanley, Johnson, Cochran, Vaughn and DOES violated the Due Process provisions of the Fifth Amendment and Article I § 7 of the California Constitution, and the Takings provisions of the Fifth Amendment and Article 1 § 19, of the California Constitution.

53. Consequently, Plaintiff's rights under the United States and California Constitutions described above were interfered with by threat, intimidation, or coercion in violation of Cal. Civil Code § 52.1, thereby entitling Plaintiff to recover damages under Cal. Civ. Code § 52.1(b) proximately caused by the 30 day impoundments and the attendant violations of law previously described.

00133186.DOCX

54. Plaintiff timely submitted to the State of California a claim for damages under Cal. Gov't Code § 910. The State has denied the claim and this lawsuit is commenced within six months of that denial.

**COUNT SIX – UNLAWFUL SEIZURE (CAL. CONST. ART. I §13)**

(As Against All Defendants)

55. By this reference, Plaintiff re-alleges and incorporates all previous paragraphs as if fully set forth herein.

56. The search of Plaintiff's person and the 30 day impound of Plaintiff's vehicle were accomplished without a warrant and not justified by an exception to the warrant requirement, i.e., during the 30 day impound the vehicle did not present a threat to public safety and at no time did Trinidad have facts justifying the search of Plaintiff's person. Nor was there any process for judicial review of justification for the impound. Hence, the impound violated Art. I § 13 of the California Constitution. Therefore, Plaintiff is entitled to recover damages under Art. I § of the California Constitution where such damages were proximately caused by the 30 day impound.

57. Plaintiff timely submitted to the State of California a claim for damages under Cal. Gov't Code § 910. The State has denied the claim and this lawsuit is commenced within six months of that denial.

**IV. PRAYER:**

WHEREFORE, Plaintiff respectfully request that this Court grant the following relief:

*On The First Cause of Action (against Defendant Trinidad only):*

1. That this Court award Plaintiff compensatory, punitive damages and statutory damages, according to proof;

2. That this Court award attorneys' fees and costs incurred in this action under 42 U.S.C. § 1988, Cal. Civ. Code § 52.1(h), and any other appropriate statute;

///

///

00133186.DOCX

1           *On The Second Cause of Action (against All Defendants):*

2       3. That this Court award Plaintiff compensatory and punitive damages, according to

3     proof;

4       4. That this Court award attorneys' fees and costs incurred in this action under 42

5     U.S.C. § 1988, and any other appropriate statute;

6           *On The Third and Fourth Causes of Action (against Defendants Farrow,*

7             *Stanley, Johnson, Cochran, Zagorski, Vaughan and DOES):*

8       5. That this Court award Plaintiff compensatory and punitive damages, according to

9     proof;

10      6. That this Court award attorneys' fees and costs incurred in this action under 42

11    U.S.C. § 1988, and any other appropriate statute;

12          *On The Fifth Cause of Action (against all Defendants):*

13      7. That this Court award Plaintiff damages allowed under Cal. Civ. Code § 52.1(b),

14    including statutory damages and penalties;

15      8. That this Court award attorneys' fees and costs incurred in this action under Cal.

16    Civ. Code § 52.1(h), and any other appropriate statute.

17          *On The Sixth Cause of Action (against all Defendants):*

18      9. That this Court award Plaintiff damages allowed under Art. I § 7 of the California

19    Constitution;

20      10. That this Court award attorneys' fees and costs incurred in this action under Cal.

21    Civ. Proc. Code § 1021.5 and California's Private Attorney General doctrine, and any

22    other appropriate statute.

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

00133186.DOCX

*On All Causes of Action:*

11. Costs of suit; and

12. That this Court grant such other and further relief as may be just and proper.

DATED: September 2, 2019

**DONALD W. COOK**
Attorney for Plaintiff

By: _____
            Donald W. Cook

1

**DEMAND FOR JURY TRIAL**

2         Plaintiff hereby demands a jury trial.

3   DATED: September 2, 2019

4

5                         **DONALD W. COOK**
                          Attorney for Plaintiff
6

7

8   By

9                         Donald W. Cook

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28