O

# United States District Court
# Central District of California

| | |
|---|---|
| ANGELICA R. UNTALAN,<br><br>Plaintiff,<br><br>v.<br><br>WARREN A. STANLEY, et al.,<br><br>Defendants. | Case No. 2:19-cv-07599-ODW-(JEMx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS [45]** |

## I. INTRODUCTION

Before the Court is a Motion for Judgment on the Pleadings (the "Motion") by Defendants Warren A. Stanley, Joseph Farrow, Tariq D. Johnson, Jonathan Cochran, Joseph Zagorski, Justin Vaughan, and Paola Trinidad (collectively "Defendants). (Mot. J. on Pleadings ("Mot."), ECF No. 45.) On September 9, 2019, Plaintiff Angelica R. Untalan initiated this action against Defendants. (Compl., ECF No. 1.) On May 20, 2020, Defendants filed this Motion, which the parties have now fully briefed. (*See* Mot.; Opp'n to Mot. ("Opp'n Mot."), ECF No. 50; Reply in Supp. Mot. ("Reply"), ECF No. 51.) For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Untalan is the registered owner of a 2000 model year Pontiac Grand Am (the "Vehicle"). (Compl. ¶ 20.) On May 12, 2019, Untalan drove her Vehicle on Rosecrans Avenue in Los Angeles County and Defendant Paola Trinidad, an on-duty California Highway Patrol ("CHP") officer, stopped Untalan's Vehicle. (*Id.*) After Trinidad stopped Untalan, she determined that Untalan had never been issued a California driver's license, and consequently, Trinidad directed the seizure and impoundment of Untalan's Vehicle pursuant to California Vehicle Code section 14602.6 (hereinafter "Section 14602.6"). (*Id.*)

Section 14602.6 authorizes a peace officer to seize and impound a vehicle whenever the officer determines a person is driving a vehicle "without ever having been issued a driver's license." Cal. Veh. Code. § 14602.6(a)(1). When an officer impounds a vehicle pursuant to Section 14602.6, the driver of the impounded vehicle must receive notice and the opportunity for a storage hearing. Cal. Veh. Code §§ 14602.6(a)(2), 14602.6(b). The impoundment is for a minimum of thirty days, but an impounded vehicle may be released prior to thirty days if specific conditions are satisfied. *Id.* § 14602.6(d).

On May 14, 2019, Untalan arrived at the CHP South Los Angeles station with a licensed California driver. (Compl. ¶ 24.) Untalan requested that the CHP release her Vehicle, informed the CHP that she had a licensed driver available to take custody of her Vehicle, and expressed her willingness to pay the towing and storage fees owed. (*Id.*) According to Untalan, the CHP officials refused to release her Vehicle and informed her that it would be impounded for thirty days. (*Id.*)

On May 17, 2019, Untalan's counsel spoke with Defendant Justin Vaughan, a CHP sergeant, regarding the impound of her Vehicle. (*Id.* ¶ 26.) Untalan's counsel informed Vaughan "the Ninth Circuit's decision in *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017)" required the CHP to release her Vehicle. (*Id.*) According to Untalan "Vaughan stated he was aware of the *Brewster* decision but that the decision did not

apply to the CHP because *Brewster* involved the Los Angeles Police Department." (*Id.*) Vaughan further stated that the CHP would not release Untalan's Vehicle prior to the expiration of the thirty-day impound unless she could establish justification for early release pursuant to Section 14602.6. (*Id.*)

On May 23, 2019, Untalan and her counsel met with Defendants Jonathan Cochran and Joseph Zagorski, CHP lieutenants, at the storage hearing required pursuant to California Vehicle Code section 22852 (hereinafter "Section 22852"). (*Id.* ¶ 27.) Untalan tendered payment of the towing and storage fees and requested that her Vehicle be released to her agent, a licensed California driver. (*Id.*) Cochran and Zagorski refused to release the Vehicle and cited Section 14602.6 as the basis for their refusal. (*Id.*)

On June 19, 2019, Untalan's counsel sent a letter to Defendants Warren A. Stanley (CHP commissioner) and Tariq D. Johnson (CHP captain). (*Id.* ¶ 28.) In the letter, Untalan's counsel requested that the CHP release her Vehicle and detailed Untalan's prior attempts to obtain her Vehicle. (*Id.*) Untalan alleges Stanley and Johnson never responded to her letter. (*Id.*) Untalan further alleges that "at the end of the [thirty]-day impound period" she did not reclaim her Vehicle because she did not have the funds to pay the accrued towing and storage fees. (*Id.* ¶ 31.)

Untalan contends Defendants refused to release her Vehicle to "punish" her for driving without a license. (*Id.* ¶ 29.) According to Untalan, Defendants Farrow and Stanley personally approved the "Impound Policy"[2] and its application to the seizure and impoundment of Untalan's Vehicle. (*Id.* ¶ 30.) Untalan further alleges that Farrow and Stanley were informed the impound of vehicles was inconsistent with federal law, but they continued to authorize the seizure and impoundment of vehicles in contravention of the law. (*Id.*)

---

[2] Based on the allegations in the Complaint, the policy Untalan refers to is premised on the California Vehicle Code sections 14602.6 and 22852. (*See* Compl. ¶¶ 12–19.)

On September 1, 2019, Untalan filed a Complaint against Defendants, in their individual capacities, asserting six claims for: (1) unlawful search of person under 42 U.S.C. § 1983 and California Civil Code section 52.1(b); (2) unlawful vehicle impound under 42 U.S.C. § 1983; (3) violation of substantive and procedural due process under 42 U.S.C. § 1983; (4) unlawful takings under 42 U.S.C. § 1983; (5) violation of the Bane Civil Rights Act under California Civil Code section 52.1; and (6) unlawful seizure in violation of article I, section 13 of the California Constitution. (*See* Compl. ¶¶ 32–57.)

Defendants move for judgment on the pleadings as to all claims against Defendant Tariq D. Johnson. (Mot. 5–6.) Defendants also seek judgment on the pleadings on claims two through six as to the other Defendants, Warren A. Stanley, Joseph Farrow, Jonathan Cochran, Joseph Zagorski, Justin Vaughan, and Paola Trinidad. (Mot. 12–25.)

### III.  LEGAL STANDARD

After the pleadings are closed, but within such time as to not delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ P. 12(c). The standard applied to a Rule 12(c) motion is essentially the same as that applied to Rule 12(b)(6) motions; a judgment on the pleadings is appropriate when, even if all the allegations in the complaint are true, the moving party is entitled to judgment as a matter of law. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." (citations omitted)); *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005).

When ruling on a motion for judgment on the pleadings, a court should construe the facts in the complaint in the light most favorable to the plaintiff, and the movant must clearly establish that no material issue of fact remains to be resolved. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). However,

"conclusory allegations without more are insufficient to defeat a motion [for judgment on the pleadings]." *Id.* If judgment on the pleadings is appropriate, a court has discretion to grant the non-moving party leave to amend, grant dismissal, or enter a judgment. *See Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV. DISCUSSION

Defendants move for judgment on the pleadings on several grounds.[3] First, Defendants argue Johnson is entitled to judgment because Untalan has failed to sufficiently state a claim for supervisory liability. Second, Defendants contend they are entitled to judgment on Untalan's unlawful impound claim under qualified immunity. Third, Defendants aver they are entitled to judgment on Untalan's due process claim because (1) they are entitled to qualified immunity, and (2) Untalan has failed to sufficiently allege a due process claim. Fourth, Defendants argue they are entitled to judgment on Untalan's takings claim because Defendants cannot be liable in their individual capacities for a takings claim. Fifth and finally, Defendants assert they are entitled to judgment on Untalan's state law claims because (1) Untalan does not allege a valid claim for damages under the California Constitution, (2) Untalan

---

[3] Defendants also seek judicial notice of: 1) the storage impound and release procedures, and post-storage hearings; 2) the CHP 215 citation issued to Untalan; 3) the CHP 180 form issued to Untalan; and 4) the post storage hearing report. (Req. Jud. Notice 3, ECF No. 46.) Untalan objected to Defendants' Request. (ECF No. 50.) Additionally, Defendants objected to evidence Untalan submitted in support of her Opposition. (ECF No. 52.) As the Court did not rely on any documents submitted in support of Defendants' Request for Judicial Notice or Untalan's Opposition in reaching its decision, Defendants' Request (ECF No. 46) and Untalan's objections (ECF No. 50) are moot. Moreover, the Court did not rely on any documents Untalan submitted in support of her Opposition, consequently, Defendants' objections thereto (ECF No. 52) are moot.

fails to state a claim under the Bane Act, and (3) Untalan's state law claims are barred by immunity. The Court addresses each argument in turn.

**A. Supervisory Liability**

Defendants seek judgment on all federal and state law claims against Johnson on the grounds that Untalan fails to state a supervisory liability claim against him. (Mot. 5–6.) As an initial matter, the Court will evaluate whether Untalan has sufficiently stated claims against Johnson under a theory of supervisory liability.

*1. Federal Law Claims (Claims One Through Four)*

Untalan contends she has stated a claim against Johnson, commissioner of the CHP, under the theory of supervisory liability. (Compl. ¶¶ 28–29; Opp'n Mot.) Untalan asserts Johnson "never responded to [her] counsel's letter" demanding release of Untalan's Vehicle. (Compl. ¶ 28; Opp'n Mot. 9–10.) According to Untalan "[e]ven though Johnson did not make the initial decision to impound [her] [V]ehicle" she holds him liable as a supervisor because he knew of and acquiesced in the unconstitutional conduct by his subordinates. (Opp'n Mot. 9–10 (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).)

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr*, 652 F.3d at 1207 (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury." *Id.* To state a claim against a supervisor for deliberate indifference, a plaintiff must plausibly allege a supervisor's "knowledge of" and "acquiescence in" the unconstitutional conduct by his subordinates. *Id.*

The Ninth Circuit's reasoning in *Starr* is illustrative. The plaintiff Dion Starr, an inmate in the Los Angeles County Jail, brought a § 1983 claim against the Los Angeles County Sheriff for damages that resulted from a violent attack he allegedly

suffered while incarcerated. *See id.* at 1204. The court engaged in a two-step process to determine whether the Starr could state a § 1983 claim against the sheriff for deliberate indifference to the actions by his subordinates. *Id.* at 1216. First, the court evaluated the allegations in the complaint and determined that the factual allegations were neither "bald" nor "conclusory." *See id.* at 1216, 1209–12 (citing over twenty well-pleaded allegations in the complaint regarding the sheriff's knowledge of and acquiescence in the unconstitutional conduct of his subordinates). Second, the court determined the well-pleaded allegations plausibly suggested the sheriff was deliberately indifferent to unconstitutional conduct of his subordinates. *Id.* at 1216.

In this case, Untalan's factual allegations concerning Johnson and the extent of his knowledge fall short of the level found sufficient in *Starr* because she does not sufficiently allege Johnson's knowledge. (*Compare* Compl., *with Starr*, 652 F.3d at 1209–12.) Untalan alleges her counsel sent a letter to Johnson on June 19, 2019, which detailed her unsuccessful attempts to obtain her Vehicle from the CHP, and that Johnson never responded to that letter. (Compl. ¶ 28.) In conclusory fashion, Untalan contends that, because her counsel mailed a letter to Johnson, he was "informed" her Vehicle was wrongfully impounded. (*See id.*) This allegation is insufficient to demonstrate Johnson's knowledge, and Untalan does not provide any other allegations that could plausibly suggest Johnson had "knowledge of" unconstitutional violations by his subordinates.

In sum, Untalan has not alleged any facts that plausibly suggest Johnson was deliberately indifferent to any alleged unconstitutional conduct by his subordinates. Therefore, the Court **GRANTS** the Motion as the § 1983 claims against Johnson (Counts One through Four). As it is not clear that amendment would be futile, the Court **GRANTS** Untalan **leave to amend**. *See Leadsinger, Inc. v. BMG Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (ruling that leave to amend is proper when amendment is not futile).

*2. State Law Claims*

Next, Defendants contend California Government Code section 820.8 bars Untalan's state law claims against Johnson. (Mot. 5–6.) Under section 820.8 "a public employee is not liable for an injury caused by the act or omission of another person." Cal. Gov't Code § 820.8. Section 820.8 codifies the prevailing view that public employees are only liable in tort for acts or omissions in which they are immediately, directly, and personally involved. *See, e.g.*, *Martinez v. Cahill*, 215 Cal. App. 2d 823, 824 (1963).

Untalan offers no opposition to Defendants' section 820.8 argument, and therefore impliedly concedes that the state law claims against Johnson are precluded. *See Silva v. U.S. Bancorp*, No. 5:10-cv-01854-JHN (PJWx), 2011 WL 7096576, at *4 (C.D. Cal. Oct. 6, 2011) ("[T]he Court finds that Plaintiff concedes his . . . claim should be dismissed because he failed to address Defendants' arguments in his Opposition."); *Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived." (citing *Loricchio v. Office of U.S. Trustee*, 313 F. App'x. 51, 52 (9th Cir. 2009))).

Accordingly, the Court **GRANTS** the Motion as to the state law claims against Johnson (Counts One, Five, and Six). As Untalan failed to oppose, and thus conceded her claims should be dismissed, she is **denied leave to amend**.

**B. Unlawful Vehicle Impound**

Defendants move for judgment on Untalan's claim for unlawful impound under 42 U.S.C. § 1983 (Count Two). (Mot. 6–12.) Untalan contends the seizure and thirty-day impoundment of her Vehicle violated her Fourth Amendment rights because the officers acted without a warrant, and an exception to the warrant requirement did not apply. (Compl. ¶ 38.) Defendants claim they are entitled to qualified immunity because they did not violate clearly established law. (Mot. 6–12.)

"[O]fficers are not entitled to qualified immunity if (1) the facts taken in the light most favorable" to the party alleging injury demonstrate "the officers' conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged violation." *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018) (internal quotation marks and brackets omitted); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court may address these prongs in either order. *Pearson v. Callahan*, 555 U.S. 223, 239 (2009). Dismissal is only appropriate where a court "can determine, based on the complaint itself, that qualified immunity applies." *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).

*1. Untalan Adequately Alleges the Officers Violated a Constitutional Right*

The first step in a qualified immunity analysis is, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. Here, Untalan's version of the facts, taken in a light most favorable to Untalan and reading the Complaint liberally, sets out a violation of Untalan's Fourth Amendment rights.

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. The Ninth Circuit has held that "[thirty]-day impounds under section 14602.6 are seizures for Fourth Amendment purposes." *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018), *cert. denied*, 140 S. Ct. 142 (2019); *see also Brewster* 859 F.3d at 1196 (a seizure is "a meaningful interference with an individual's possessory interests in [her] property." (quoting *Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992)). Here, Untalan does not appear contest the initial seizure, only the thirty-day impound. (*See generally* Opp'n Mot.) Therefore, the issue before the Court is whether the thirty-day impound was reasonable in light of the allegations in the Complaint.

Even if the initial seizure of Untalan's Vehicle did not violate the Fourth Amendment, "[a] seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must

cease the seizure or secure a new justification." *Brewster*, 859 F.3d at 1197. In *Brewster*, the Ninth Circuit explained that the exigency that justified the initial seizure of a vehicle "vanish[es] once the vehicle arrive[s] in impound and [the vehicle's registered owner] show[s] up with proof of ownership and a valid driver's license." *Id.* at 1196. In *Sandoval*, the court expanded upon its holding in *Brewster*, and found that once the registered owner of the vehicle is "able to provide a licensed driver who could take possession" of the vehicle, the initial justification for the seizure dissipates. *Sandoval*, 912 F.3d at 516–517.

Here, the exigency that justified the initial seizure of Untalan's Vehicle was that she was driving without a license. (Compl. ¶ 23; *see* Mot. 4.) However, Untalan alleges that two days after her Vehicle was seized, she "appeared at the CHP South Los Angeles station with a licensed California driver." (Compl. ¶ 24.) While at the station, Untalan requested the CHP release her Vehicle, informed the CHP that a licensed driver was available to take custody of the Vehicle, and expressed her willingness to pay all towing and storage fees owed. (*Id.*) Nevertheless, "CHP officials refused to release the [V]ehicle, stating it would be impounded for 30 days pursuant to the Impound Policy." (*Id.*)

The allegations, taken in the light most favorable to Untalan, state a violation of Untalan's Fourth Amendment rights. *See Brewster*, 859 F.3d at 1197; *see also Sandoval*, 912 F.3d at 516–517. Once Untalan arrived at the CHP station with a licensed driver who was prepared to take custody of the Vehicle, the "exigency that justified the seizure vanished." *See Brewster*, 859 F.3d at 1196. Moreover, Defendants have not provided any valid justification for the continued seizure after Untalan arrived at the station with a licensed driver.

2. *Untalan's Allegations Sufficiently Implicate a Clearly Established Right*

The Court now turns to the second step of the qualified immunity analysis, i.e., whether the contours of the Fourth Amendment rights at issue were sufficiently clear that "every reasonable official" would have understood that what he was doing

10

violated the Fourth Amendment. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation marks omitted). "The right the official is alleged to have violated must have been 'clearly established' in an appropriately particularized sense." *Calabretta v. Floyd*, 189 F.3d 808, 812 (9th Cir. 1999). "We begin by looking to binding precedent from the Supreme Court or [the Ninth Circuit]." *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019). "[A] case directly on point" is not required to show the right in question was clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

Untalan relies on *Brewster* and *Sandoval*, two Ninth Circuit decisions issued before her Vehicle was impounded, to demonstrate that her allegations implicate a clearly established right. (Opp'n Mot. 11–12.) Untalan contends these cases clearly established that continued possession of an impounded vehicle violates the Fourth Amendment unless the government provides a new justification for the prolonged seizure. (*Id.*) The Court agrees.

*Brewster* and *Sandoval* clearly established that a thirty-day seizure requires compliance with the Fourth Amendment, and a prolonged seizure requires a new justification after the initial justification for the seizure (i.e., driving without a license) dissipates. *Brewster*, 859 F.3d at 1197; *Sandoval*, 912 F.3d at 516–517 (finding continued impoundment unreasonable once the registered owner provides a licensed driver willing to take possession of the vehicle).

*In Brewster* the Ninth Circuit addressed the question: is a "30-day impound of a vehicle . . . a 'seizure' requiring compliance with the Fourth Amendment[?]" *Id.* at 1195. The court answered in the affirmative, and noted that it is "well established that 'a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests.'" *Id.* at 1196 (quoting *United States v. Jacobsen*, 466 U.S. 109, 124 (1984)). The court reasoned "the exigency that justified the seizure vanished once the vehicle arrived in

11

impound and [the plaintiff] showed up with proof of ownership and a valid driver's license." *Id.* Thus, *Brewster* holds that officers are required to secure a new justification for the continued possession of an impounded vehicle once the vehicle's owner arrives with proof of ownership and a valid driver's license. *See generally id.*

In *Sandoval*, the Ninth Circuit affirmed summary judgment in favor of the plaintiffs on their claim that a thirty-day impound violated their Fourth Amendment rights. 912 F.3d at 513. As in this case, the plaintiffs in *Sandoval* were stopped by officers, and their vehicles were impounded under Section 14602.6 because the drivers did not have valid California driver's licenses. *Id.* at 513–514. Relying on *Brewster*, the Ninth Circuit in *Sandoval* rejected the defendant's argument that a thirty-day impound is justified simply because the vehicle's registered owner does not have a valid driver's license. *Id.* at 516–517.

Based upon the Ninth Circuit's decisions in *Brewster* and *Sandoval*, the Court finds that every reasonable official would have understood that the continued seizure of Untalan's Vehicle after she appeared at the CHP station with a licensed California driver who could take possession of her Vehicle violated Untalan's Fourth Amendment rights. As evidenced by Untalan's factual allegations, the exigency warranting the initial seizure was discharged. *See Sandoval*, 912 F.3d at 516–517. Thereafter, Defendants were required to establish a new justification for their continued seizure of her Vehicle—which they did not.

The Court finds that Defendants are not entitled to qualified immunity on Untalan's second claim. Accordingly, Defendants' Motion is **DENIED** as to Untalan's claim for unlawful vehicle impound (Count Two).

**C. Due Process**

Next, Defendants seek judgment on Untalan's due process claim for failure to state a claim. (Count Three). (Mot. 12–18.) Defendants assert several arguments for why the thirty-day impoundment was not a violation of due process: (1) the notice was sufficient; (2) the Section 22852 storage hearing satisfied constitutional standards;

(3) the thirty-day impoundment was not a "punitive sanction"; and (4) requiring payment of towing and storage fees to reclaim possession of her Vehicle was not a "de facto monetary penalty." (*See* Mot. 17–21; Compl. ¶¶ 39–46.) The Court will address each in turn.

*1. Notice*

Untalan contends the notice Defendants provided was constitutionally inadequate because it: did not inform her that the thirty-day impound was imposed to "punish" her; did not state the crime she committed; and failed to adequately explain that her Vehicle was impounded. (Opp'n Mot. 15–22; Compl. ¶¶ 39–46.) Defendants argue notice given pursuant to Sections 14602.6 and 22852 satisfies due process. (Mot. 14.)

"A primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful." *City of West Covina v. Perkins*, 525 U.S. 234, 240 (1999). A governmental agency is not required to provide individualized noticed of a plaintiff's legal rights or remedies beyond what is provided in "generally available state statutes and case law." *Id.* at 241. "Once the property owner is informed that [her] property has been seized, [s]he can turn to these public sources to learn about the remedial procedures available to h[er]." *Id.* "When a statute fixes the time and place of meeting of any board or tribunal, no special notice to parties is required. The statute is itself sufficient notice." *Id.* (quoting *Reetz v. Michigan*, 188 U.S. 505, 509 (1903)); *see also Salazar v. City of Maywood*, 414 F. App'x 73, 75 (9th Cir. 2011) (finding the notice provided under Section 14602.6 satisfies due process); *see also Salazar v. Schwarzenegger*, No. CV07-1854 SJO (VBKx), 2008 WL 11357881, at *5 (C.D. Cal. Sept. 8, 2008) (same).

Untalan's allegations that the notice she received violated due process have no merit. (*See* Compl. ¶ 18; *see also* Opp'n Mot. 15.) Untalan does not contend Defendants failed to provide her with notice, that the notice failed to cite to Section 14602.6, or that the notice was inconsistent with Sections 14602.6 and 22852. (*See*

*generally* Compl.) Instead, Untalan's argument is that the notice she received does not meet more rigid requirements she believes are necessary to satisfy due process. (*See, e.g.*, Compl. ¶ 45.) Despite Untalan's allegations to the contrary, the statute itself is sufficient notice to satisfy due process. *See Perkins*, 525 U.S. at 241; *Schwarzenegger*, 2008 WL 11357881, at *5.

### 2. *Storage Hearing*

Untalan alleges the Section 22852 post-deprivation storage hearing ("Storage Hearing") violated due process because the Storage Hearing was not conducted by a neutral party, and the Storage Hearing was not before a judicial or quasi-judicial officer. (Complaint ¶ 45; Opp'n Mot. 22–24.) Defendants contend due process is not violated merely because the hearing examiner is employed by CHP. (Mot. 15.)

First, there is no requirement that a neutral party conduct the Storage Hearing for the process to comport with due process. The Ninth Circuit has rejected Untalan's very argument, stating it "is simply not the law" that a hearing examiner affiliated with the impounding agency violates due process. *David v. City of Los Angeles*, 307 F.3d 1143, 1147 (9th Cir. 2002), *rev'd on other grounds*, 538 U.S. 715 (2003); *see also Spokane Cnty. Legal Servs., Inc. v. Legal Servs. Corp.*, 614 F.2d 662, 668 (9th Cir. 1980) (the existence of an employer-employee relationship between the hearing examiner and the agency "did not render the proceedings either unfair or violative of due process.").

Second, there is no requirement that the Storage Hearing be held before a judicial or quasi-judicial officer to satisfy due process. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldrige*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). "There is no constitutional requirement that the decisionmaker be an uninvolved person when a property interest protected by due process is at stake." *Jordan v. City of Lake Oswego*, 734 F.2d 1374, 1376 n.1 (9th Cir. 1984). Untalan fails to cite to any controlling authority to support her argument that in the context of a

storage hearing, due process requires a judicial or quasi-judicial officer to conduct the hearing. As such, the Court finds the storage hearing did not violate due process merely because it was not before a judicial or quasi-judicial officer.

### 3. "Punitive sanction," and the Payment of Towing and Storage Fees

Untalan contends the thirty-day impoundment constituted a "punitive sanction" in violation of due process. (Compl. ¶ 43.) Defendants assert no case cited by Untalan supports this theory.[4] (Mot. 16.) The Court agrees, the cases Untalan cites to support this position are inapposite. (*See* Compl. ¶ 43.)

Untalan also alleges the CHP required her to pay fees to reclaim her Vehicle, which she describes as a "*de facto*" monetary penalty in violation of due process. (Compl. ¶ 44.) Again, there is no support for this position. In the Ninth Circuit, requiring the payment of storage and towing fees does not violate due process. *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1325 ("[T]he government's considerable interest in retaining possession of the vehicle as security for the owner's payment of towing and storage charges outweighs the private interests that would be served by the procedure.")

None of Untalan's myriad theories underlying her third claim for violation of due process have merit. Accordingly, the Court **GRANTS** Defendants' Motion as to Untalan's due process claim (Count Three).[5] As it is not clear that amendment would be futile, Untalan is **granted leave to amend**. *See Leadsinger*, 512 F.3d at 532.

### D. Unlawful Taking

Defendants move for judgment on Untalan's unlawful takings claim (Count Four). (Mot. 18.) Untalan alleges that, because "Defendants physically took possession of the [Vehicle]" for a public purpose and without compensating her, the

---

[4] For instance, *Kokesh v. Sec. & Exch. Comm'n*, 137 S. Ct. 1635 (2017), addressed the issue of whether a disgorgement was a "sanction" subject to a five-year statute of limitations. *United States v. Bajakajian*, 524 U.S. 321 (1998), involved the forfeiture of money pursuant to a federal statute that required travelers to report when they were transporting more than $10,000 in currency. *Bell v. Wolfish*, 441 U.S. 520 (1979), concerned the conditions of confinement for pretrial detainees.

[5] In light of the Court's determination, Defendants' qualified immunity argument is moot.

thirty-day impound constituted a "Taking" under the Takings Clause of the Fifth Amendment. (Compl. ¶ 48.) Defendants contend they are not liable in their individual capacities for takings damages and Untalan's Vehicle was not taken for a "public use." (Mot. 18–20.)

Neither party cites to binding precedent concerning whether Defendants may be liable in their individual capacities for a takings claim. And it appears the Ninth Circuit has not addressed this issue. However, the Fourth and Sixth Circuits have held that a Fifth Amendment takings claim cannot be brought against individuals sued in their personal capacities. *See Langdon v. Swain*, 29 F. App'x 171, 172 (4th Cir. 2002) ("[T]akings actions sound against governmental entities rather than individual state employees in their individual capacities."); *see also Vicory v. Walton*, 730 F.2d 466, 467 (6th Cir. 1984) ("Plaintiff may not maintain [a takings clause] action against these defendants who neither have nor claim the eminent domain power, nor any power similar to it."). Other district courts in this circuit have agreed. *See Bridge Aina Le'a, LLC v. State of Hawaii Land Use Comm'n*, 125 F. Supp. 3d 1051, 1079 (D. Haw. 2015); *United States v. Sandwich Isles Commc'ns, Inc.*, No. CV 18-00145 JMS-RT, 2019 WL 4017233, at *5 (D. Haw. Aug. 26, 2019).

The Court is persuaded by these courts and agrees that monetary relief is unavailable against Defendants in their individual capacities for a takings claim. *See Bridge Aina Le'a, LLC*, 125 F. Supp. 3d at 1078–80. The Court therefore **GRANTS** Defendants' Motion as to Untalan's unlawful takings claim (Count Four). Untalan is **denied leave to amend**. *See Carrico*, 656 F.3d at 1008.

**E.     Bane Act**

Defendants seek judgment on Untalan's claim under California Civil Code section 52.1 (the "Bane Act") (Count Five). (Mot. 21.) Untalan contends her rights were "interfered with by threat, intimidation, or coercion" in violation of the Bane Act. (Compl. ¶ 53.) Defendants argue that Untalan fails to state a claim under the

Bane Act, and even if she does state a claim, Defendants are immune under California Government Code sections 820.6, 821.6, and 820.2. (Mot. 21–25.)

The Bane Act was enacted to address hate crimes. *See Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018). The Bane Act "civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation, or coercion.'" *Id.* (quoting *Venegas v. Cnty. of Los Angeles*, 153 Cal. App. 4th 1230, 1238 (2007)). A plaintiff may bring a claim under the Bane Act "against public officials who are alleged to interfere with protected rights." *Id.* In addition to alleging a constitutional violation, to state a claim under the Bane Act a plaintiff must allege "a specific intent" to violate the plaintiff's constitutional rights. *Id.* at 1043.

The Court has already determined that Untalan has sufficiently alleged a violation of her Fourth Amendment rights. Thus, here, Untalan need only allege that Defendants impounded her Vehicle "with specific intent to violate [her] Fourth Amendment rights." *Sandoval*, 912 F.3d at 520. But, even taken in the light most favorable to Untalan, her allegations fail to demonstrate Defendants impounded her Vehicle with "a specific intent" to violate her Fourth Amendment rights. (*See generally* Compl.) Therefore, the Court finds that Untalan has failed to state a claim for violation of the Bane Act.

Accordingly, the Court **GRANTS** Defendants' Motion as to Untalan's Bane Act claim (Count Five).[6] As it is not clear that amendment would be futile, Untalan is **granted leave to amend**. *See Leadsinger*, 512 F.3d at 532.

**F.    Unlawful Seizure Under the California Constitution**

Defendants move for judgment on Untalan's sixth and final claim for violation of article I, section 13 of the California Constitution (Count Six). (Mot. 20.) Untalan alleges she is entitled to damages for Defendants' warrantless seizure. (Compl. ¶¶ 55–

---

[6] In light of the Court's determination, Defendants' remaining arguments concerning immunity under California Government Code sections 820.6, 821.6 and 820.2 are moot.

57.) Defendants seek judgment on the basis that no authority supports that an individual may bring a private right of action for damages under this section of the California Constitution. (Mot. 20–21.)

Article I, section 13 of the California Constitution protects against unreasonable searches and seizures. The California Supreme Court has not decided whether article I, section 13 creates a private right of action for damages, and federal courts are split on this issue. *Estate of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1178–79 (E.D. Cal. 2019) (collecting cases); *see Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 392 (2017) (stating that the California Supreme Court has not settled this issue).

Nevertheless, even if a private right of action existed, the California Court of Appeal has held a thirty-day impoundment pursuant to the provisions of Section 14602.6 does not constitute an unlawful seizure under the California Constitution. *Alviso v. Sonoma Cnty. Sheriff's Dep't*, 186 Cal. App. 4th 198, 214 (2010). Untalan fails to cite to any controlling authority to the contrary on this issue.

Therefore, the Court **GRANTS** Defendants' Motion as to Untalan's claim for violation of article I, section 13 of the California Constitution (Count Six). Because Untalan's claim fails as a matter of law, she is **denied leave to amend**. *See Carrico*, 656 F.3d at 1008.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Judgment on the Pleadings (ECF No. 45) as follows:

1. The Motion is **GRANTED with leave to amend** the federal claims (Counts One through Four), and **without leave to amend** the state law claims (Counts One, Five, and Six) as to Untalan's claims against Johnson;

2. The Motion is **DENIED** as to Untalan's unlawful vehicle impound claim (Count Two);

3. The Motion is **GRANTED with leave to amend** as to Untalan's due process claim (Count Three);

4. The Motion is **GRANTED without leave to amend** as to Untalan's unlawful takings claim (Count Four);

5. The Motion is **GRANTED with leave to amend** as to Untalan's Bane Act claim (Count Five);

6. The Motion is **GRANTED without leave to amend** as to Untalan's claim under article I, section 13 of the California Constitution (Count Six).

If Untalan chooses to amend her pleadings, she shall file a First Amended Complaint ("FAC") in conformance with this Order no later than **twenty-one (21) days** from the date of this Order. If Untalan files a FAC, Defendants shall file a response no later than **fourteen (14) days** from the date of the FAC filing.

**IT IS SO ORDERED.**

October 15, 2020

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE