XAVIER BECERRA
Attorney General of California
MARK T. CUMBA
Supervising Deputy Attorney General
DONNA M. DEAN
Deputy Attorney General
State Bar No. 187104
 300 South Spring Street, Suite 1702
 Los Angeles, CA 90013
 Telephone: (213) 269-6509
 Fax: (916) 731-2120
 E-mail: Donna.Dean@doj.ca.gov
*Attorneys for Defendants*
*Warren A. Stanley, Tariq D. Johnson,*
*Jonathan Cochran, Joseph Zagorski,*
*Justin Vaughan, Paola Trinidad, and*
*Joseph Farrow*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANGELICA R. UNTALAN,**<br><br>Plaintiff,<br><br>v.<br><br>**WARREN A. STANLEY, et al.,**<br><br>Defendants. | 2:19-cv-07599 ODW (JEMx)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:  January 25, 2021<br>Time:  1:30 p.m.<br>Courtroom:  5D<br><br>Judge:  Hon. Otis D. Wright, II<br><br>Trial Date:  March 16, 2021<br>Action Filed: September 6, 2019 |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................1

STATEMENT OF FACTS ..................................................................................2

      A.   California Vehicle Code Sections 14602.6 and 22852 and CHP's Impound Policy ..........................................................................2

      B.   The Incident in This Case ..........................................................4

ARGUMENT ......................................................................................................5

I.    Plaintiff's Motion for Partial Summary Judgment as to Her Second Cause of Action Should Be Denied Because None of the Individual Defendants Violated Her Fourth Amendment Rights .........6

      A.   The Individual Defendants Cannot Be Held Liable for the Alleged Unconstitutional Actions of Others ..............................6

      B.   None of the Defendants Violated Plaintiff's Fourth Amendment Rights ...............................................................6

           1.  Officer Trinidad ..........................................................6

           2.  Sergeant Vaughan ......................................................8

           3.  Lieutenant Cochran .....................................................9

           4.  Lieutenant Zagorski ....................................................9

           5.  Captain Johnson .......................................................10

II.   Plaintiff's Motion for Partial Summary Judgment as to Her Second Cause of Action Should Be Denied Based On Qualified Immunity Because Defendants Did Not Violate Clearly Established Law ...................................................................13

      A.   The Law Is Not Clearly Established That a Thirty Day Impound Pursuant to Vehicle Code Section 14602.6 Violates the Fourth Amendment ..............................................13

      B.   The Present Case Is Not "Squarely Governed" by the Decisions in *Brewster* and *Sandoval* .........................................19

CONCLUSION .................................................................................................21

# TABLE OF AUTHORITIES

Page

CASES

*Ahlers v. Rabinowitz*
  684 F.3d 53 (2d Cir. 2012)....................................................................................18

*Ali v. Ramsdell*
  423 F.3d 810 (8th Cir. 2005) ...............................................................................18

*Ashcroft v. al-Kidd*
  563 U.S. 731 (2011)............................................................................ 13, 14, 19

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)................................................................ 1, 6, 12, 13, 14, 20

*Brewster v. Beck*
  859 F.3d 1194 (9th Cir. 2017) ...................................................................... *passim*

*Brower v. County of Inyo*
  489 U.S. 593 (1989)............................................................................................15

*California v. Hodari D.*
  499 U.S. 621 (1991)............................................................................................15

*Case v. Eslinger*
  555 F.3d 1317 (11th Cir. 2009) ..........................................................................19

*City & Cty. of San Francisco, Calif. v. Sheehan*
  135 S. Ct. 1765 (2015)....................................................................................8, 16

*City of Escondido v. Emmons*
  139 S. Ct. 500 (2019)..........................................................................................19

*City of West Covina v. Perkins*
  525 U.S. 234 (1999)............................................................................................16

*Davis v. Scherer*
  468 U.S. 183 (1984)............................................................................................14

*DeNault v. Ahern*
  857 F.3d 76 (1st Cir. 2017)................................................................................18

# TABLE OF AUTHORITIES
## (continued)

Page

*Fox v. Van Oosterum*
   176 F.3d 342 (6th Cir. 1999) .............................................................................. 18

*Gilmore v. City of Minneapolis*
   837 F.3d 827 (8th Cir. 2016) .............................................................................. 19

*Gonzalez v. Village of West Milwaukee*
   671 F.3d 649 (7th Cir. 2012) .............................................................................. 18

*Jessop v. City of Fresno*
   936 F.3d 937 (9th Cir. 2019) .............................................................................. 18

*Kisela v. Hughes*
   138 S. Ct. 1148 (2018) ....................................................................................... 19

*Lee v. City of Chicago*
   330 F.3d 456 (7th Cir. 2003) .............................................................................. 18

*Miranda v. City of Cornelius*
   429 F.3d 858 (9th Cir. 2005) ................................................................................ 7

*Mitchell v. Forsyth*
   472 U.S. 511 (1985) ........................................................................................... 14

*Pearson v. Callahan*
   555 U.S. 223 (2009) ........................................................................................... 14

*Reichle v. Howards*
   566 U.S. 658 (2012) ........................................................................................... 14

*Sandoval v. Cty. of Sonoma*
   912 F.3d 509 (9th Cir. 2018) ....................................................................... *passim*

*Shafer v. Cty. of Santa Barbara*
   868 F.3d 1110 (9th Cir. 2017) ............................................................................ 14

*Shaul v. Cherry Valley-Springfield Central School District*
   363 F.3d 177 (2d Cir. 2004) ............................................................................... 18

*Smith v. Santa Rosa Police Dep't*
   97 Cal. App. 4th 546 (2002) ................................................................................ 3

**TABLE OF AUTHORITIES**
(continued)

Page

*Starr v. Baca*
652 F.3d 1202 (9th Cir. 2011) ..............................................................12

*Thompson v. Whitman*
85 U.S. 457 (1873)......................................................................15, 17

*United States v. Cervantes*
703 F.3d 1135 (9th Cir. 2012) ..............................................................7

*Ward v. San Diego County*
791 F.2d 1329 (9th Cir. 1986) ..............................................................19

*White v. Pauly*
137 S. Ct. 548 (2017).........................................................................20

*Whren v. United States*
517 U.S. 806 (1996)...........................................................................8

**STATUTES**

42 U.S.C.
§ 1983................................................................................ *passim*

California Vehicle Code
§ 14602.6........................................................................... *passim*
§ 14607.4.............................................................................2
§ 22650...............................................................................3
§ 22852............................................................... 2, 3, 4, 5, 9, 19
§ 26710...............................................................................4

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment .............................................................. *passim*

**INTRODUCTION**

Plaintiff seeks partial summary judgment with respect to her second cause of action pursuant to 42 U.S.C. section 1983 for unlawful seizure in violation of the Fourth Amendment arising out of the impoundment of her vehicle for thirty days pursuant to California Vehicle Code section 14602.6. Plaintiff's claim centers on her allegation that she appeared at a California Highway Patrol (CHP) office two days after her car was impounded demanding that it be released and her assertion that the release was mandated by recent Ninth Circuit case law. But the unidentified officers with whom plaintiff allegedly spoke that day are not defendants in this lawsuit, and CHP is also not a defendant. The individual defendants in this case cannot be held liable for the alleged unconstitutional actions of other individuals or of CHP as an entity. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Accordingly, plaintiff's motion for partial summary judgment should be denied because none of the defendants violated plaintiff's Fourth Amendment rights with respect to the impoundment of plaintiff's vehicle as follows:

(1)     Defendant Trinidad lawfully impounded plaintiff's vehicle based on the "community caretaking doctrine," and she had no further involvement with plaintiff's vehicle thereafter;

(2) Defendant Vaughan had no involvement in any decision to release plaintiff's vehicle after the impoundment and plaintiff did not personally appear before Defendant Vaughan to recover her vehicle – rather, Defendant Vaughan merely spoke with plaintiff's attorney via telephone and advised her to schedule a vehicle storage hearing;

(3) Defendants Cochran and Zagorski released plaintiff's vehicle early (before the expiration of the thirty-day impound period) following a vehicle storage hearing; and

(4) Defendant Johnson approved the early release of plaintiff's vehicle, and the letter from plaintiff's counsel after the vehicle was released and after

1    the expiration of the thirty-day impound period is unavailing.

2        In addition, defendants are entitled to qualified immunity with respect to

3    plaintiff's Fourth Amendment unlawful seizure claim because the law is not clearly

4    established that a thirty-day impound of plaintiff's vehicle under the circumstances

5    of this case violates the constitution.  Therefore, defendants request that the court

6    deny plaintiff's motion for partial summary judgment as to her second cause of

7    action. [1]

8                        **STATEMENT OF FACTS**

9    **A.    California Vehicle Code Sections 14602.6 and 22852 and CHP's**
         **Impound Policy**
10

11       The California Legislature passed the Safe Streets Act of 1994 based on

12   findings that unlicensed drivers and drivers with suspended licenses are far more

13   likely than licensed drivers to cause fatal accidents and to inflict injuries and

14   property loss on innocent drivers.  Cal. Veh. Code § 14607.4(b)-(e).  An estimated

15   75 percent of all drivers whose driving privileges have been withdrawn continue to

16   drive.  Cal. Veh. Code § 14607.4(e).  As a result, the California Legislature

17   determined that it was "necessary and appropriate to take additional steps to

18   prevent unlicensed drivers from driving . . . ."  Cal. Veh. Code § 14607.4(f).  The

19   Legislature expressed "a critical interest" in taking all appropriate steps to protect

20   California residents from this danger.  *Id.*  This included the temporary

21   impoundment of vehicles driven by unlicensed drivers, or drivers whose licenses

22   were suspended for safety violations.  Cal. Veh. Code § 14602.6.

23       Vehicle Code section 14602.6 authorizes a peace officer to impound a

24   vehicle for thirty days whenever that officer determines:

25       . . . that a person was driving a vehicle while his or her driving privilege

26       was suspended or revoked, driving a vehicle while his or her driving

27   _____

28   [1] Defendants do not oppose plaintiff's motion for partial summary judgment
     with respect to plaintiff's first cause of action.

                                    2

1    privilege is restricted … and the vehicle is not equipped with a

2    functioning, certified interlock device, or driving a vehicle without ever

3    having been issued a driver's license . . . .

4  Cal. Veh. Code § 14602.6(a)(1).

5        The process of taking custody of the vehicle – i.e., the seizure of the vehicle

6  – must comply with the Fourth Amendment.  Cal. Veh. Code § 22650.

7        Section 14602.6 provides that owners of impounded vehicles "shall be

8  provided the opportunity for a storage hearing . . . in accordance with Section

9  22852."  Cal. Veh. Code § 14602.6(b).  The purpose of the hearing is to "determine

10  the validity of…the storage" or "consider any mitigating circumstances attendant to

11  [] the storage."  *Id.*  The statute lists several conditions that trigger the immediate

12  release of the vehicle, including that the driver reinstated or acquired a valid

13  driver's license and insurance.  Cal. Veh. Code § 14602.6(d)(1).  The fact that a

14  registered owner lacked actual knowledge that the driver did not have a valid

15  license is also a mitigating circumstance that supports early release.  *See Smith v.*

16  *Santa Rosa Police Dep't,* 97 Cal. App. 4th 546, 549-550 (2002).  Vehicle Code

17  section 22852 dictates that the request for a hearing be made within ten days of the

18  notice to the vehicle owner and that the hearing be conducted "within 48 hours of

19  the request, excluding weekends and holidays."  Cal. Veh. Code § 22852(b) and (c).

20        CHP's impound policy tracks Vehicle Code sections 14602.6 and 22852 and

21  provides additional procedural guidance.  Defendants' Statement of Genuine Issues

22  of Material Fact and Additional Material Fact (DSF) No. 44.[2]  The policy provides

23  that the appeal of a determination that the impound was found to be valid should be

24  made "through the departmental claims process on a CHP 287, Claims of $1,000 or

25  ────────────────

26  [2] Defendants' evidence in opposition to plaintiff's motion for partial
summary judgment was also submitted in support of defendants' motion for partial

27  summary judgment.  Dkt. Nos. 94-2 and 94-5.  Rather than re-submit the same
evidence again, defendants refer to and incorporate by reference the previously

28  filed evidence in support of their motion for partial summary judgment in support
of their opposition to plaintiff's motion for partial summary judgment.

1   Less, or through the Victim Compensation and Government Claims Board
2   (VCGCB) if the claim is over $1,000." DSF No. 58.

3       **B.   The Incident in This Case**

4       On May 12, 2019, CHP Officer Trinidad stopped a 2000 Pontiac Grand Am
5   registered to plaintiff near the intersection of Broadway and Rosecrans in Los
6   Angeles. DSF Nos. 1, 2, 45. Officer Trinidad determined that plaintiff did not
7   have a license and her driving privileges were suspended due to her failure to
8   appear on prior citations for driving without a license. DSF Nos. 3, 46. Officer
9   Trinidad issued a CHP 215 citation to plaintiff for a violation of Vehicle Code
10  section 26710 (defective windshield). DSF No. 12. Officer Trinidad also directed
11  that plaintiff's vehicle be seized and impounded for thirty days pursuant to
12  California Vehicle Code section 14602.6. DSF No. 4. There was no licensed
13  driver available to drive plaintiff's vehicle away from the location where it was
14  stopped, plaintiff's vehicle was blocking traffic, and Officer Trinidad believed that
15  plaintiff's vehicle was in a high-crime area potentially exposing the vehicle to theft
16  or vandalism if left unattended. DSF Nos. 47-49. After plaintiff's vehicle was
17  towed, Officer Trinidad had no further involvement with plaintiff's vehicle and no
18  role in any decisions regarding the release of plaintiff's vehicle. DSF No. 50.

19      A copy of the CHP 180 form (Notice of Stored Vehicle) was provided to
20  plaintiff. DSF No. 51. The reverse side of the form provides information for
21  requesting a hearing pursuant to Vehicle Code section 22852. *Id.* Plaintiff testified
22  that she did not read the reverse side of the CHP 180 form provided to her. *Id.*

23      On or about May 17, 2019, plaintiff's counsel, Leah Gasser-Ordaz, spoke with
24  Sergeant Vaughan via telephone regarding the impound of plaintiff's vehicle. DSF
25  Nos. 17, 52. During that telephone call, Ms. Gasser-Ordaz asserted that per
26  *Brewster*, the refusal to release plaintiff's vehicle on May 14, 2019, was wrongful,
27  and Sergeant Vaughan stated he was aware of the *Brewster* decision but the case
28  did not apply to plaintiff's situation. DSF Nos. 18 and 19. Sergeant Vaughan also

1    advised Ms. Gasser-Ordaz to schedule a vehicle storage hearing in accordance with

2    Vehicle Code section 22852.  DSF Nos. 20, 53.

3        On May 23, 2019, plaintiff appeared for a vehicle storage hearing pursuant

4    to California Vehicle Code section 22852 before Lieutenant Cochran and

5    Lieutenant Zagorski.  DSF Nos. 21, 54.  Plaintiff's vehicle was released at the

6    conclusion of the vehicle storage hearing – before the expiration of the thirty-day

7    impound period.  DSF Nos. 26, 55.  As a condition of the release, plaintiff's

8    counsel agreed that she would not allow plaintiff to drive the vehicle for the

9    remainder of the thirty days unless plaintiff obtained a valid license during that

10   time.  DSF Nos. 26, 32.

11       On May 23, 2019, Captain Johnson approved the Vehicle Storage Hearing

12   Report in which it was noted that plaintiff's vehicle was released early.  DSF Nos.

13   35, 36, 56.

14       On or about June 19, 2019, plaintiff's attorney sent a letter to Captain

15   Johnson in which she claimed that plaintiff had offered to pay accrued storage

16   charges and had a licensed driver to pick up her vehicle on May 14, 2019, and that

17   under *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017), plaintiff's vehicle should

18   have been released on that day.  DSF No. 37.  Captain Johnson forwarded the letter

19   to CHP's legal department.  *Id.*

20       On or about July 1, 2019 plaintiff's vehicle was sold at a lien sale.  DSF No.

21   43.

22   //

23   //

24   //

25   //

26   //

27   //

28   //

**ARGUMENT**

I. **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO HER SECOND CAUSE OF ACTION SHOULD BE DENIED BECAUSE NONE OF THE INDIVIDUAL DEFENDANTS VIOLATED HER FOURTH AMENDMENT RIGHTS**

   A. **The Individual Defendants Cannot Be Held Liable for the Alleged Unconstitutional Actions of Others**

   Supreme Court precedent holds that liability may only be imposed based on a defendant's "own individual actions" that violate the constitution. *Iqbal*, 556 U.S. at 676. Plaintiff's Fourth Amendment unlawful seizure claim hinges on her allegation that she went to a CHP office with a licensed driver to retrieve her vehicle on May 14, 2019 – two days after it was impounded – and unidentified "CHP personnel" refused to release the vehicle to her. DSF Nos. 15, 16. Plaintiff also mentions a telephone call between her attorney and CHP employee Ms. Moore. DSF No. 18. Plaintiff's allegations in this regard initially fail because they are based on inadmissible evidence. DSF Nos. 15, 16, 17; Objections to Evidence Nos. 1-7, 9-13. But, more importantly, plaintiff does not assert that any of the defendants named in this lawsuit were involved in the alleged May 14 encounter (DSF Nos. 15, 16), and Ms. Moore is not a defendant in this case. Defendants cannot be held liable for the alleged unconstitutional actions of others; rather, plaintiff must demonstrate that each individual defendant violated her constitutional rights. As set forth below, plaintiff has failed to meet her burden of proof.

   B. **None of the Defendants Violated Plaintiff's Fourth Amendment Rights**

   None of the defendants violated plaintiff's Fourth Amendment rights; therefore, plaintiff's motion should be denied.

      1. **Officer Trinidad**

   Plaintiff's motion for partial summary judgment as to Officer Trinidad with respect to plaintiff's unlawful seizure claim should be denied because the community caretaking exception to a warrantless seizure applied, and Officer

1    Trinidad had no further involvement regarding plaintiff's vehicle after the initial

2    impound.  The community caretaking doctrine is an exception to the Fourth

3    Amendment's warrant requirement for the seizure of a vehicle.  *United States v.*

4    *Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012).  "In their 'community caretaking'

5    function, police officers may impound vehicles that 'jeopardize public safety and

6    the efficient movement of vehicular traffic.'"  *Miranda v. City of Cornelius*, 429

7    F.3d 858, 864 (9th Cir. 2005).  Accordingly, an officer may impound a vehicle

8    without a warrant if the vehicle's location creates "a hazard to other drivers" or

9    makes it "a target for vandalism or theft."  *Id.*

10        After Officer Trinidad stopped plaintiff's vehicle, she learned that plaintiff

11    was unlicensed and had prior citations for driving without a license.  DSF Nos. 3,

12    46.  Accordingly, plaintiff could not lawfully continue to drive her vehicle, and

13    there was no licensed driver able to drive the vehicle from its location.  DSF No.

14    47.  In addition, the vehicle could not be left where it was because it was blocking

15    traffic, and Officer Trinidad believed that the vehicle was in a high-crime area

16    which would potentially expose plaintiff's vehicle to theft or vandalism if left

17    unattended.  DSF Nos. 48, 49.  The *Brewster* and *Sandoval* decisions did not hold

18    that Vehicle Code section 14602.6 violates the Fourth Amendment or that vehicles

19    could not be seized and removed from the street pursuant to Vehicle Code section

20    14602.6.  Accordingly, Officer Trinidad's seizure of plaintiff's vehicle was lawful

21    under the Fourth Amendment pursuant to the community caretaking doctrine.

22    *Miranda*, 429 F.3d at 864.

23        Plaintiff's argument that Officer Trinidad did not follow the CHP – South Los

24    Angeles Area Office Standard Operating Procedure (SOP) is unavailing.  The SOP

25    provides that an officer who impounds a vehicle pursuant to Vehicle Code section

26    14602.6 shall cite the driver based on one of various statutes for driving without a

27    valid license.  DSF Nos. 24, 30, 39.  Although Officer Trinidad impounded

28    plaintiff's vehicle pursuant to Vehicle Code section 14602.6 because her driving

1   privileges were suspended (DSF Nos. 3, 46), the citation issued to plaintiff was

2   based on her cracked windshield.  DSF No. 12.  A Fourth Amendment claim cannot

3   be based upon violation of police department policy; the pertinent issue is whether

4   the officer's actions were in accord with the Fourth Amendment objective

5   reasonableness test, not whether it violated police department rules, regulations, or

6   guidelines.  *Whren v. United States*, 517 U.S. 806, 815 (1996) ("[P]olice

7   enforcement practices, even if they could be practicably assessed by a judge, vary

8   from place to place and from time to time.  We cannot accept that the search and

9   seizure protections of the Fourth Amendment are so variable."); *see also*, *City and*

10  *Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1777 (2015) (fact officer

11  acted contrary to her training will not negate officer's qualified immunity).  Since

12  CHP's SOP does not set Fourth Amendment standards, the fact that Officer

13  Trinidad did not comply with the SOP by giving plaintiff a break and citing her for

14  a less serious offense is of no consequence.

15       Importantly, after the vehicle was initially seized, Officer Trinidad had no

16  further involvement with plaintiff's vehicle or with any decisions regarding the

17  release of plaintiff's vehicle.  DSF No. 50.  Thus, even assuming that *Brewster* and

18  *Sandoval* govern this case, Officer Trinidad did not violate the Fourth Amendment

19  with respect to the seizure of plaintiff's vehicle because she was not involved in any

20  decisions regarding the release of plaintiff's vehicle after it was lawfully seized.

21  Therefore, plaintiff's motion for partial summary judgment with respect to Officer

22  Trinidad should be denied.

23       **2.   Sergeant Vaughan**

24       Plaintiff's motion for partial summary judgment as to Sergeant Vaughan

25  should be denied because the uncontroverted facts establish that Sergeant Vaughan

26  had no involvement in any decisions regarding the release of plaintiff's vehicle.

27  Rather, Sergeant Vaughan's only involvement in this matter was a telephone

28  conversation with plaintiff's attorney during which he advised that plaintiff should

1  schedule a vehicle storage hearing in accordance with Vehicle Code section 22852.

2  DSF Nos. 17, 20, 52, 53.  Plaintiff did not personally appear before Sergeant

3  Vaughan with a licensed driver seeking the return of her vehicle; thus, the

4  telephone call with plaintiff's counsel was not an occasion for Sergeant Vaughan to

5  release plaintiff's vehicle.  See *Brewster*, 859 F.3d at 1196 ("[T]he exigency that

6  justified the seizure vanished once the vehicle arrived in impound and Brewster

7  showed up with proof of ownership and a valid driver's license.")  Accordingly,

8  even assuming that *Brewster* and *Sandoval* govern this case, Sergeant Vaughan did

9  not violate the Fourth Amendment with respect to plaintiff's vehicle because he

10  was not involved in any decisions regarding the release of plaintiff's vehicle.

### 3.   Lieutenant Cochran

12  Plaintiff's motion for partial summary judgment as to Lieutenant Cochran

13  should be denied because the uncontroverted facts establish that Lieutenant

14  Cochran released plaintiff's vehicle after a vehicle storage hearing.  Lieutenant

15  Cochran conducted the storage hearing on May 23, 2019.  DSF Nos. 21, 54.  At the

16  conclusion of the hearing, Lieutenant Cochran released plaintiff's vehicle – before

17  the expiration of the thirty-day impound period.  DSF Nos. 26, 32, 55.  The release

18  was conditioned on plaintiff's counsel's agreement that she would not allow

19  plaintiff to drive the vehicle for the remainder of the thirty days unless plaintiff

20  obtained a valid license during that time.  DSF Nos. 26, 32.  The *Brewster* and

21  *Sandoval* decisions did not hold that a vehicle must be *unconditionally* released in

22  order to comply with the Fourth Amendment.  Thus, even assuming that *Brewster*

23  and *Sandoval* govern this case, Lieutenant Cochran did not violate the Fourth

24  Amendment with respect to plaintiff's vehicle because he released it to her on his

25  first and only occasion to do so.

### 4.   Lieutenant Zagorski

27  Lieutenant Zagorski is entitled to judgment in his favor as to plaintiff's Second

28  Cause of Action pursuant to 42 U.S.C. section 1983 based on unlawful vehicle

1  impound because the uncontroverted facts establish that Lieutenant Zagorski did

2  not prevent the release of plaintiff's vehicle after a vehicle storage hearing.

3  Lieutenant Zagorski attended the vehicle storage hearing conducted by Lieutenant

4  Cochran on May 23, 2020.  DSF No. 28.  At the conclusion of the hearing,

5  plaintiff's vehicle was released before the expiration of the thirty-day impound

6  period.  DSF Nos. 26, 32, 55.  Thus, even assuming that *Brewster* and *Sandoval*

7  govern this case, Lieutenant Zagorski did not violate the Fourth Amendment with

8  respect to plaintiff's vehicle.

9      **5.   Captain Johnson**

10     Captain Johnson is entitled to judgment in his favor as to plaintiff's Second

11  Cause of Action pursuant to 42 U.S.C. section 1983 based on unlawful vehicle

12  impound because the uncontroverted facts establish that Captain Johnson approved

13  the release of plaintiff's vehicle before the expiration of the thirty-day impound

14  period after a vehicle storage hearing.  DSF Nos. 35, 36, 56.

15     Plaintiff's contention that Captain Johnson knew about the *Brewster* decision

16  "and its impact" (Dkt. No. 97, p. 15:25-26) on the situation in this case is specious.

17  Plaintiff misleadingly asserts that Captain Johnson knew "that the circumstances of

18  [plaintiff's] impound were like those in *Brewster*."   Dkt. No. 97, pp. 15:26-16:1.

19  This contention is based on a mischaracterization of Captain Johnson's deposition

20  testimony.  DSF Nos. 35-37.  Plaintiff's assertion is based on the following

21  deposition questions and answers:

22      Q Captain, have you ever heard of a decision called Brewster versus

23      Beck? It may have been referred to in the June 2019 letter.

24      A Yes. Yeah. The LAPD case?

25      Q Correct.

26      A Correct.

27      Q So I take it probably you first heard about the case probably when you

28      saw that letter; would that be fair?

1   A Yeah, I think I -- I think we heard about it when the decision came

2   down. I don't know when it was. Yeah, when I saw the letter, it did

3   refresh my memory.

4   Q Yeah. I mean, the decision came down, by the way, in, I think, June

5   27th of 2017.

6                                    ***

7   Q Okay. How would you have heard about the decision?

8   A I think I was talking to one of my colleagues about it. I can't remember

9   specifically where I was or when it happened.

10   Q Okay. I mean --

11   A The LAPD or somebody hit somebody with a car or something like

12   that?

13   Q Yeah. Basically, it was a 14602.6 impound and the registered owner,

14   her brother-in-law was driving the car with a suspended license. LAPD

15   stops. They do the .6 impound. Two, three days later, the registered

16   owner came to the LAPD said, "I'm licensed. I'll pay the fees. Let me

17   have my car back." LAPD said, "No, it's a 30-day impound." And the

18   Ninth Circuit ruling was that, well, once the owner showed -- registered

19   owner showed up offering all the fees, basically, you had to give the car

20   back.

21   A Right.

22   Q Anyway. That's basically a shorthand description of the case. Does that

23   sound roughly familiar?

24   A Yeah, that sounds roughly familiar, correct.

25   Plaintiff's Exhibit D (Johnson Depo., pp. 121:8-122:14).  Plaintiff mischaracterizes

26   this testimony as establishing that Captain Johnson knew the holding and impact of

27   *Brewster* on the situation in this case.  First, the situation in this case is not as

28   described by counsel – i.e., unlike in *Brewster*, the registered owner and driver in

1   this case are the same person.  Second, Captain Johnson's response that the

2   description by plaintiff's counsel "sounds roughly familiar" is a far cry from a

3   statement that Captain Johnson understood "the impact" of the *Brewster* decision

4   on plaintiff's situation.

5       Plaintiff also falsely implies that Captain Johnson knew on May 23, 2019,

6   when he approved the CHP 422B form (Storage Hearing Report) that plaintiff had

7   allegedly come to the CHP office with a licensed driver on May 14, 2019, to

8   retrieve her vehicle.  DSF Nos. 35, 37.  As plaintiff points out, however, the only

9   information available to Captain Johnson was the information contained in the CHP

10  422B form and the supporting documents that included the citation to plaintiff, the

11  CHP 180 form, a memorandum correcting the CHP 180 form, and plaintiff's

12  driving history.  DSF No. 36.  None of those documents have any information

13  about plaintiff's alleged visit to the CHP office on May 14.  Plaintiff's Exhibits I, J,

14  and K.

15      Plaintiff's argument that Captain Johnson violated plaintiff's Fourth

16  Amendment rights because he received a letter from plaintiff's attorney alleging

17  that the impound of plaintiff's vehicle was unlawful is unavailing.  Supervisory

18  officials may not be sued under 42 U.S.C. section 1983 solely on the basis of their

19  position as a supervisory government official; supervisory officials can only be

20  sued under section 1983 based upon their own wrongful behavior.  *Iqbal*, 556 U.S.

21  at 677.  "A defendant may be held liable as a supervisor under § 1983 'if there

22  exists either (1) his or her personal involvement in the constitutional deprivation, or

23  (2) a sufficient causal connection between the supervisor's wrongful conduct and

24  the constitutional violation.'"  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)

25  (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  "[A] plaintiff must

26  show the supervisor breached a duty to plaintiff which was the proximate cause of

27  the injury."  *Id.*  Here, plaintiff's attorney sent a letter to Captain Johnson dated June

28  19, 2019 – nearly *four weeks* after plaintiff's vehicle was released on May 23 and

12

1   after the thirty-day impound period had expired.[3]  DSF No. 37.  As this court

2   already noted, simply because plaintiff's counsel mailed a letter to Captain Johnson

3   weeks after the vehicle was released does not mean that Captain Johnson "was

4   'informed' [plaintiff's] vehicle was wrongfully impounded."  Dkt. No. 75, p. 7:10-

5   20.

6       Plaintiff offers no authority to support her argument that Captain Johnson

7   should be held liable for the alleged constitutional violation of a subordinate based

8   on the fact that plaintiff's attorney wrote him a letter advising him of the alleged

9   violation *after the fact*.  Indeed, plaintiff's proposed rule directly contradicts the

10  authority holding that there is no respondeat superior supervisor liability and would

11  make every supervisory official vicariously liable for the alleged unconstitutional

12  conduct of a subordinate by simply learning about the conduct after the fact – this is

13  not the law.  *Iqbal*, 556 U.S. at 676.

14      Thus, even assuming that *Brewster* and *Sandoval* govern this case, Captain

15  Johnson did not violate plaintiff's Fourth Amendment rights.

16  **II.  PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO HER
        SECOND CAUSE OF ACTION SHOULD BE DENIED BASED ON QUALIFIED
17      IMMUNITY BECAUSE DEFENDANTS DID NOT VIOLATE CLEARLY
        ESTABLISHED LAW**
18

19      **A.  The Law Is Not Clearly Established That a Thirty Day Impound
             Pursuant to Vehicle Code Section 14602.6 Violates the Fourth
20           Amendment**

21      The doctrine of qualified immunity shields a government official from liability

22  for monetary damages unless the plaintiff establishes "(1) that the official violated a

23  statutory or constitutional right, and (2) that the right was 'clearly established' at

24  the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)

25  (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Courts have the discretion

26      [3] Plaintiff's cite to nothing in CHP's policy that would permit Captain
27  Johnson to take action at this point – after the vehicle was released and after the
    thirty-day impound period had expired.  Rather, the policy provides – and plaintiff
28  was advised at the vehicle storage hearing – that the remedy was to file a
    government claim.  DSF No. 58.

1   to decide which prong of this analysis to address first under the circumstances of a

2   particular case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A decision in the

3   defendant's favor on either prong establishes qualified immunity, even without

4   consideration of the other prong. *See Reichle v. Howards*, 566 U.S. 658, 663

5   (2012); *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017), *cert.*

6   *denied sub nom. Shafer v. Padilla*, 138 S. Ct. 2582 (2018).

7        Qualified immunity grants officials "breathing room to make reasonable but

8   mistaken judgments about open legal questions" and "properly applied, it protects

9   all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*,

10   563 U.S. at 743. The purpose of qualified immunity is to ensure public officials

11   will not be unduly hampered by fear of lawsuits when carrying out their duties to

12   the public, and that peace officers in particular will not always err on the side of

13   caution for fear of being held financially liable. *Mitchell v. Forsyth*, 472 U.S. 511,

14   526 (1985); *Davis v. Scherer*, 468 U.S. 183, 196 (1984). Qualified immunity

15   accomplishes these objectives by serving as "both a defense to liability and limited

16   'entitlement not to stand trial or face the other burdens of litigation.'" *Ashcroft v.*

17   *Iqbal*, 556 U.S. 662, 672 (2009).

18        To determine whether a right was "clearly established," a right must be

19   established "in a 'particularized' sense so that the 'contours' of the right are clear to

20   a reasonable official." *Reichle*, 566 U.S. at 665 (quoting *Anderson v. Creighton*,

21   483 U.S. 635, 640 (1987)). For that to be true, "existing precedent must have

22   placed the . . . constitutional question beyond debate." *Id.* (citation omitted). This

23   requires either "controlling authority" or "a robust 'consensus of cases of

24   persuasive authority'" establishing that the official's conduct was unconstitutional.

25   *al-Kidd*, 563 U.S. at 741-742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

26   //

27   //

28   //

1     The law is not clearly established that the impoundment of plaintiff's vehicle

2    under the circumstances in this case was unconstitutional.[4]  First, there is no United

3    States Supreme Court authority that directly addresses the issue in this case.

4    Instead, the existing Supreme Court precedent indicates the continued possession of

5    property after a lawful seizure is subject only to due process considerations.  The

6    Supreme Court explained that a seizure is the singular event of taking possession or

7    control, as distinguished from the subsequent possession or control of that property:

8         From the time of the founding to the present, the word 'seizure' has

9          meant a 'taking possession' 2 N. Webster, An American Dictionary of

10        the English Language 67 (1828); 2 J. Bouvier, A Law Dictionary 510

11        (6th ed. 1856); Webster's Third New International Dictionary 2057

12        (1981).

13   *California v. Hodari D.,* 499 U.S. 621, 624 (1991) ("seizure" equated with

14   "actually bringing it within physical control."); *see also Brower v. County of Inyo,*

15   489 U.S. 593, 596 (1989) (defining seizure as "an intentional acquisition of

16   physical control").

17     While *Hodari D.* and *Brower* addressed the seizure of a person, *Hodari D.*

18   cited *Thompson v. Whitman,* 85 U.S. 457 (1873), which explained the distinction

19   between the seizure and possession of property.  In *Thompson,* a New Jersey sheriff

20   seized a vessel for illegal clam and oyster raking pursuant to a state statute

21   authorizing seizure within his county.  *Id.* at 470.  However, the sheriff initially

22   seized the vessel in New York waters and then brought it to New Jersey, arguing

23   that the seizure was continuous and thus became a seizure in New Jersey.  *Id.*  The

24

---

25        [4] Plaintiff erroneously asserts that CHP "recognizes that the law was clearly established as of June 2017 when *Brewster v. Beck* was decided."  DSF No. 42;

26   Objections to Evidence Nos. 15-21.  This assertion is based on inadmissible hearsay email messages by one CHP employee sent after this lawsuit was filed.  *Id.*  Since

27   the evidence upon which this alleged fact is based is inadmissible, the alleged fact is disputed.  *Id.*  Moreover, the opinion of one CHP employee does not establish

28   CHP policy and cannot retract the qualified immunity defense asserted by the individual defendants in this case.

1   Supreme Court rejected the argument, holding that "seizure" only applied to the

2   initial act of taking possession: "A seizure is a single act, and not a continuous fact.

3   Possession, which follows seizure, is continuous." *Id.* at 471.

4          Consistent with the finding that a seizure is a specific act, and not a state of

5   being, the Supreme Court evaluated the retention and disposition of lawfully seized

6   property under due process standards, while making no reference to the Fourth

7   Amendment in *City of West Covina v. Perkins,* 525 U.S. 234 (1999). In *Perkins*,

8   property had been lawfully seized, but was no longer needed for the criminal

9   investigation or prosecution. *Id.* at 236. In reviewing the due process standards

10  and requirements for returning the property, the Court never suggested that the

11  continued possession of the property after it was no longer needed as evidence had

12  become a Fourth Amendment violation. *Id.* at 240-243. Thus, Supreme Court

13  precedent supports the argument that the continued possession of property that is

14  lawfully seized is governed by due process, not the Fourth Amendment.

15         Second, contrary to plaintiff's contention, the Ninth Circuit's decision in

16  *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017), has not clearly established the law

17  on this issue. The Supreme Court recently emphasized that it has never held that a

18  single circuit court opinion – as opposed to a Supreme Court opinion – can clearly

19  establish the law for purposes of qualified immunity. *City & Cty. of San Francisco,*

20  *Calif. v. Sheehan*, 135 S. Ct. 1765, 1776 (2015). Moreover, the decision in

21  *Brewster* has been questioned in subsequent Ninth Circuit opinions, and, as such, is

22  not "clearly established."

23         In *Brewster*, the court held that "the Fourth Amendment is implicated when a

24  vehicle is impounded under section 14602.6." *Id.* at 1197. The parties in *Brewster*

25  agreed that the seizure was justified by the community caretaking doctrine at the

26  outset, but the court held that the Fourth Amendment required further justification

27  for the continued possession of the vehicle for thirty days. *Id.* at 1196, 1197. The

28  Ninth Circuit followed *Brewster* in *Sandoval v. Cty. of Sonoma*, 912 F.3d 509 (9th

Cir. 2018), *cert. denied sub nom. Cty. of Sonoma, California v. Sandoval*, 140 S. Ct. 142 (2019), but with only two justices agreeing that the Fourth Amendment governed the issue of whether the continued possession of the impounded vehicle was constitutional. *Id.* at 516-517, 521.

In his concurring opinion in *Sandoval*, Circuit Judge Watford (who was on the panel in *Brewster*) stated:

> I recognize that the Fourth Amendment analysis in this case is controlled by *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017), a decision I joined. After giving the matter further consideration, I am now of the view that we reached the right result in *Brewster* but for the wrong reason. California Vehicle Code § 14602.6 is constitutionally deficient not because it runs afoul of the Fourth Amendment, as we held in *Brewster*, but because the post-seizure hearing it affords does not comply with the Due Process Clause of the Fourteenth Amendment.

*Sandoval*, 912 F.3d at 521 (J. Watford, concurring).  In a more recent concurring opinion Circuit Judge Smith stated:

> *Brewster*'s reasoning appears to conflict with the Supreme Court's jurisprudence on Fourth Amendment seizures.  The Court has defined a seizure as "a single act, and not a continuous fact." *Thompson v. Whitman*, 85 U.S. (18 Wall.) 457, 471, 21 L.Ed. 897 (1873). …
> Whereas *Brewster* held that the Fourth Amendment continues to apply after the government's initial seizure of property, these Supreme Court cases suggest that, once the government has taken possession of property, a seizure is complete.  It is "[p]ossession, which follows seizure, [that] is continuous." *Thompson*, 85 U.S. (18 Wall.) at 471.
> Perhaps because of the Court's case law, *Brewster*'s reasoning also conflicts with that of several other circuits, which have concluded that the Fourth Amendment provides protection only against the initial taking of

1    property, not its continued retention. [Citations omitted.]

2    *Jessop v. City of Fresno*, 936 F.3d 937, 943 (9th Cir. 2019) (J. Smith,

3    concurring).

4    As described by Circuit Judge Smith in the *Jessop* case, the "robust consensus

5    of cases of persuasive authority" indicates that the Fourth Amendment is *not*

6    implicated by a continuing possession of lawfully seized property.  All of the other

7    circuit courts that have addressed the issue have determined that a seizure under the

8    Fourth Amendment is limited to the taking of possession – the actual seizure of

9    person or property – and does not extend to the continued possession or custody

10   after a lawful seizure.  In *Lee v. City of Chicago,* 330 F.3d 456 (7th Cir. 2003), the

11   Seventh Circuit held that the Fourth Amendment only applied to the seizure of

12   property, and, as long the seizure itself was lawful, the Fourth Amendment did

13   not apply to the subsequent possession of property.  In *Lee,* the plaintiff's car was

14   properly seized as evidence for a criminal proceeding, but was eventually no longer

15   needed.  The plaintiff in *Lee* argued "the City's refusal to return [plaintiff's] car …

16   constituted an additional 'seizure' within the meaning of the Fourth Amendment."

17   *Id.,* 330 F.3d at 460.  The Seventh Circuit held

18   [o]nce an individual has been meaningfully dispossessed, the seizure of

19   the property is complete, and once justified by probable cause, that

20   seizure is reasonable.  The [Fourth] amendment then cannot be invoked

21   by the dispossessed owner to regain his property.

22   *Id.,* at 466; *see also Gonzalez v. Village of West Milwaukee,* 671 F.3d 649, 660 (7th

23   Cir. 2012).  A majority of circuit courts support the Seventh Circuit's decision and

24   reasoning, holding that due process provides the constitutional protection for the

25   retention and return of lawfully seized property.  *DeNault v. Ahem,* 857 F.3d 76, 84

26   (1st Cir. 2017); *Shaul v. Cherry Valley-Springfield Central School District,* 363

27   F.3d 177, 187 (2d Cir. 2004); *Ahlers v. Rabinowitz,* 684 F.3d 53, 62 (2d Cir. 2012);

28   *Fox v. Van Oosterum,* 176 F.3d 342, 351, 352 (6th Cir. 1999); *Ali v. Ramsdell,* 423

1   F.3d 810, 814 (8th Cir. 2005); *Gilmore v. City of Minneapolis,* 837 F.3d 827, 838

2   (8th Cir. 2016); *Case v. Eslinger,* 555 F.3d 1317, 1330-1331 (11th Cir. 2009).

3          Given the lack of controlling Supreme Court precedent, the uncertainty of the

4   Ninth Circuit precedent, and the overwhelming authority from other circuits in

5   opposition to *Brewster*, it cannot be said that there is "controlling authority" or "a

6   robust 'consensus of cases of persuasive authority'" establishing that defendants'

7   conduct was unconstitutional. *al-Kidd*, 563 U.S. at 741-742.[5]  Therefore,

8   defendants are entitled to qualified immunity and judgment in their favor with

9   respect to plaintiff's Fourth Amendment claim.

10      **B.    The Present Case Is Not "Squarely Governed" by the Decisions
11             in *Brewster* and *Sandoval***

12          Officers are entitled to qualified immunity where there is no existing precedent

13   that "squarely governs" the specific facts at issue. *Kisela v. Hughes,* 138 S. Ct.

14   1148, 1153 (2018); *City of Escondido v. Emmons,* 139 S. Ct. 500, 503 (2019). In

15   *Brewster*, the driver of the vehicle was not the registered owner. *Brewster*, 859

16   F.3d at 1195. In the present case, plaintiff – who had never been issued a license

17   and whose driving privileges had been suspended – was also the registered owner

18   of the vehicle. DSF Nos. 1, 2, 3, 46.  Thus, the officers had a "community

19   caretaking" concern that plaintiff would continue unlawfully driving her vehicle

20   that was not present in *Brewster*.  Furthermore, in the present case, plaintiff's

21   vehicle was released early, at the conclusion of the storage hearing that was held

22   pursuant to Vehicle Code section 22852. DSF Nos. 26, 32, 54. In *Brewster*, the

23   vehicle was not released before the thirty days had expired. *Brewster*, 859 F.3d at

24   1195. In *Sandoval*, unlike this case, the driver had a valid driver's license from

25   _____

26          [5] Plaintiff tries to make much out of the fact that defendants are not familiar
    with the legal term "community caretaking" in the context of vehicle
27   impoundments. DSF Nos. 40, 41. These facts are immaterial because law
    enforcement officer are not held to the standard of legal scholarship expected of
28   lawyers, law professors, and judges. *Ward v. San Diego County*, 791 F.2d 1329,
    1332 (9th Cir. 1986), *cert. denied*, 483 U.S. 1020 (1987).

another jurisdiction. *Sandoval*, 912 F.3d at 519.  The decisions in *Brewster and Sandoval* did not address the factual situation presented in this case and therefore did not clearly establish the law for the situation here.  Indeed, plaintiff alleges – and defendants testified – that they did not understand the *Brewster* decision to apply to the situation in the present case.  DSF No. 58.  Therefore, defendants are entitled to qualified immunity and judgment in their favor with respect to plaintiff's Fourth Amendment claim.

In addition, the *Brewster* and *Sandoval* decisions do not address the specific actions taken by the defendants in this case.  The Supreme Court's qualified immunity jurisprudence requires courts to analyze a defendant's *specific* conduct for purposes of determining clearly established law.  *See, e.g., Iqbal*, 556 U.S. at 677; *White v. Pauly*, 137 S. Ct. 548, 552 (2017).  None of the defendants in this case violated clearly established law as follows:

(1) The *Brewster* and *Sandoval* decisions did not hold that Vehicle Code section 14602.6 is unconstitutional or that vehicles could not be seized and removed from the street pursuant to Vehicle Code section 14602.6.  Thus, Officer Trinidad did not violate clearly established law by seizing plaintiff's vehicle pursuant to Vehicle Code section 14602.6.

(2) The *Brewster* and *Sandoval* decisions did not hold that an officer must authorize release of a vehicle over the telephone as opposed to when the vehicle owner appears in person "with proof of ownership and a valid driver's license."  See *Brewster*, 859 F.3d at 1196.  Thus, Sergeant Vaughan did not violate clearly established law via his telephone conversation with plaintiff's attorney.

(3) The *Brewster* and *Sandoval* decisions did not hold that officers who release a vehicle subject to conditions violate the Fourth Amendment.  Thus, Lieutenant Cochran and Lieutenant Zagorski did not violate clearly established law.

(4) The *Brewster* and *Sandoval* decisions did not hold that supervisors who receive a letter from an attorney alleging that the impound of a vehicle was

1   unconstitutional long after the vehicle was released and after the expiration of the

2   thirty-day impound period can be held liable for the alleged unconstitutional

3   conduct of his or her subordinates.  Thus, Captain Johnson did not violate clearly

4   established law.

5          (5) The *Brewster* and *Sandoval* decisions did not hold that an officer can be

6   held liable for an alleged unconstitutional failure of another officer to release a

7   vehicle.  Thus, none of the officers can be held liable for the alleged

8   unconstitutional conduct on May 14, 2019, when unidentified "CHP personnel"

9   allegedly refused to release plaintiff's vehicle.

10          Defendants did not violate clearly established law; therefore, plaintiff's motion

11  for partial summary judgment as to her second cause of action should be denied

12  based on qualified immunity.

13                                **CONCLUSION**

14          Plaintiff received the instructions for scheduling a vehicle impound hearing

15  but delayed scheduling the hearing and instead allegedly appeared at the CHP

16  office with a licensed driver demanding release of her vehicle on May 14, 2019 –

17  two days after the vehicle was impounded.  Plaintiff provides no admissible

18  evidence to support this claim, and, moreover, does not allege that any of the

19  defendants in this case were involved in the May 14 encounter.

20          Plaintiff's vehicle was released early after a vehicle storage hearing, but

21  plaintiff failed to retrieve her vehicle.  Plaintiff claims (again with inadmissible

22  evidence) that she could not afford to recover her vehicle after the hearing.  If

23  plaintiff disagreed with the determination at the hearing and believes that

24  unidentified CHP officers violated her rights when they refused to return her

25  vehicle on May 14, 2019, then her remedy was to file a government claim.  Her

26  remedy is *not* a Fourth Amendment claim against the defendants in this case

27  because none of them violated her Fourth Amendment rights, and they are all

28  entitled to qualified immunity.

1       Accordingly, for the foregoing reasons, defendants respectfully request that

2 the court deny plaintiff's motion for partial summary judgment as to her second

3 cause of action.

4

5 Dated:  January 4, 2021                         Respectfully submitted,

6                                     XAVIER BECERRA

7                                     Attorney General of California
                                    MARK T. CUMBA

8                                     Supervising Deputy Attorney General

9

10                                     s/ Donna M. Dean

11                                     DONNA M. DEAN
                                    Deputy Attorney General

12                                     *Attorneys for Defendants*
                                    *Warren A. Stanley, Joseph Farrow*

13                                     *Tariq D. Johnson, Jonathan*
                                    *Cochran, Joseph Zagorski, Justin*

14                                     *Vaughan, and Paola Trinidad*

15 LA2019504166
Opposition to Pltff's Motion for Summary Judgment.docx

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

Case Name:   **Angelica R. Untalan v. Warren A.**        No.   **2:19-cv-07599 ODW (JEMx)**
             **Stanley, et al.**

I hereby certify that on <u>January 4, 2021</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGEMENT

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>January 4, 2021</u>, at Burbank, California.


Billy Blankson                              /s/ Billy Blankson
_____        _____
Declarant                                   Signature

LA2019504166